In Re: Nomination Petition of Gary McDermott. Lewis F. Parrilla, Appellant.

Argued May 4, 1981, before Judges BLATT, CRAIG and MACPHAIL, sitting as a panel of three.

*James S. Birsic,* with him *Franklyn E. Conflenti, Cauley, Conflenti & Birsic,* for appellant.

*George C. Entenmann, Entenmann & McKinney,* for appellee.

OPINION BY JUDGE CRAIG, July 13, 1981:

In this case under the Pennsylvania Election Code (Code), Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §2601, objector Lewis F. Parrilla has presented objections to nomination petitions filed on behalf of respondent Gary McDermott, who sought to be a candidate for the Democratic party's nomination to the office of township commissioner for the Second Ward of Stowe Township, Allegheny County, in the May, 1981 primary.

The facts are not disputed. The two questioned petitions, each containing the signatures of fifteen qualified Democratic electors of the Second Ward, bear circulator's affidavits made by Mr. Harry R. Musko, who resides in the Fifth Ward of Stowe Township, not in the Second Ward.

When Mr. Musko circulated the petitions, he was accompanied by Mr. Mike Webster, a Second Ward resident who, however, was not a registered member of the Democratic party until March 24, 1981. The questioned circulator's affidavits were notarized, and the nomination petitions were filed March 10, 1981, the deadline date for filing.

Thereafter, Mr. McDermott himself circulated a substitute nomination petition to obtain fifteen signatures and filed that petition on March 19, 1981.

The objection is based upon Section 909 of the Code, 25 P.S. §2869, which provides with respect to circulator's affidavits for nomination petitions, in pertinent part, as follows:

Each sheet shall have appended thereto the affidavit of the circulator of each sheet, setting forth—(a) that he or she is a qualified elector duly registered and enrolled as a member of the designated party of the State, or *of the political district,* as the case may be, *referred to in said petition* . . . (b) his residence, giving city, borough or township, with street and number, if any . . . and (g) that, to the best of affiant's knowledge and belief, the signers are qualified electors and duly registered and enrolled members of the designated party of the State, or *of the political district,* as the case may be. (Emphasis supplied.)

Thus the primary question here is whether the Code, in requiring that the circulator be a "qualified elector duly registered and enrolled as a member of the designated party . . . of the political district . . . referred to in said petition," mandates that the circulator be a resident within the constituency for which office is sought. More specifically, does the phrase "political district" refer to that constituency, or is that phrase simply synonymous with "municipality" or "political subdivision"?

We have concluded that the intention of the Code is to require that the circulator be a resident within the constituency for which office is sought, that the timely petitions in this case were fatally defective because their circulator did not so qualify, that the defects were not amendable or curable in the circumstances of this case, and that the objections were therefore well taken, so that the nomination petitions on behalf of Mr. McDermott had to be set aside. In so concluding, we agreed with the Common Pleas Court of Allegheny County with respect to the ineffectuality of the amendments and substitution proposed, but we re-

versed that court's decision upholding the petitions originally filed, and by our order of May 6, 1981 we directed that those nomination petitions be set aside.

We now file this opinion to set forth the reasons for that order, particularly because, surprisingly, research has disclosed no reported decision dealing with this question, which obviously affects every nomination petition for offices other than statewide ones.

Our study of the Code has convinced us that "political district", although not expressly defined in the definition section, Section 102, 25 P.S. §2602, is consistently used by the legislature to refer to the constituency as to which nomination or election is sought, and not as a term synonymous with political subdivision. That meaning is made clear by study of the use of the phrase "political district" in connection with describing the qualifications of the elector signers of petitions. Section 908 of the Code, 25 P.S. §2868, states that each signer of a nomination petition must

> declare therein that he is a qualified elector of the county therein named, and in case the nomination is not to be made or candidates are not to be elected by electors of the State at large, *of the political district therein named, in which the nomination is to be made or the election is to be held.* (Emphasis added.)

Section 909, the section first quoted above, also uses "political district" with respect to the signers, requiring the circulator to make affidavit that those signers are "qualified electors and duly registered and enrolled members of the designated party of the State, or of the political district, as the case may be." That is the same section which, in item (a), likewise requires the circulator to be a "qualified elector duly registered and enrolled as a member of the designated party of the State, or of the political district, as the case may be. . . ."

Thus, if the effect of the Code's use of "political district" with respect to nomination petition signers is to require them to reside within the constituency—as its effect is universally agreed to be—then it must have the same effect when the same words are used to describe the necessary qualifications of the circulator.

Moreover, returning to Section 908, further evidence that "political district" is not synonymous with "political subdivision" or municipality is provided by the proviso which states that

if the said political district named in the petition lies wholly within any city, borough or township, or is coextensive with same, it shall not be necessary for any signer of a nomination petition to state therein the city, borough or township of his residence.

The Code thus clearly indicates that "political district" may or may not be coextensive with a municipality, and also may consist of territory less than the entire territory of a municipality.

Although we agree that the Code must be liberally construed so as not to deprive candidates or voters of the maximum allowable freedom of choice, *Ross Nomination Petition,* 411 Pa. 45, 190 A.2d 719 (1963), the use of "political district" in the Code is too consistently clear to permit us to broaden or revise it by interpretation. Moreover, a reading of the terms of the Code must prevail over any considerations conceivably suggested by the nomination petition forms as supplied by election officers, because the precise format of those forms is not specified by the law itself. However, the forms in this case do not appear to be misleading; the circulator's affidavit describes the circulator as a member of the political party and "of the political district referred to in this petition," and, of course, the petition begins with a reference to the particular ward as to which election is sought.

That the legislature should require circulators to be residents of the constituency is consistent with the view that a critical qualification of the circulator is capacity to vouch for the qualifications of the signers. *Socialist Labor Case,* 332 Pa. 78, 1 A.2d 831 (1938); *DeFino Nomination Petition,* 25 Pa. Commonwealth Ct. 646, 362 A.2d 467 (1976); *In Re Frank,* 173 Pa. Superior Ct. 400, 98 A.2d 255 (1953). Residence in the constituency is a qualification reasonably related to that capacity.

With respect to curing the defect by substitution, the court of Common Pleas was clearly correct in refusing to accept the substitute petition filed nine days late.

There remains only a question concerning the amendability of the original petitions which were timely filed. Of course, under Section 977 of the Code, 25 P.S. §2937, with respect to material errors or defects that appear on the face of the nomination petition or of the affidavits, the court may permit amendments. Even if we treat Mr. Musko's circulator's affidavit as a defect apparent on the face of the petition (on the basis that the declaration of his address is itself revelatory of his residence outside the constituency), we must agree with the Court of Common Pleas of Allegheny County that amendment here could not be based on testimony from the proposed substitute circulator, Mr. Webster, because he was also unqualified to be a circulator, not having become a registered member of the Democratic party until after the filing deadline, unlike the substituted circulator in *Martin Nomination Petition,* 435 Pa. 446, 257 A.2d 247 (1969), who was a committeeman of his party at the time of circulation.

For these reasons, we therefore have concluded that the circulator, Mr. Musko, was not a qualified circulator under the Code with respect to the office being

sought, that the circulator's affidavits made by him were therefore insufficient, that the defect was more than formal, and that the defect was not amendable because the offered testimony was not that of a person who would have been qualified to make the circulator's affidavit to the petitions in question.

## ORDER

Now, May 6, 1981, the order of the Court of Common Pleas of Allegheny County herein, dated March 31, 1981, is affirmed in part, as to striking the Nomination Petition filed on behalf of Gary E. McDermott on March 20, 1981, and is reversed with respect to its dismissal of the Petition to Set Aside Nomination Petition of Gary McDermott; and the Allegheny County Department of Elections, as the county board of elections involved, is hereby directed to set aside as void the Nomination Petitions on behalf of Gary McDermott for Democratic primary candidacy for the office of Township Commissioner of the Township of Stowe, filed March 10, 1981.

Judge MacPhail dissents.