909 A.2d 1241

COMMONWEALTH of Pennsylvania, Appellee,

v.

John McCLINTIC, Appellant.

Supreme Court of Pennsylvania.

Argued March 1, 2006.

Decided Nov. 22, 2006.

466

Karl Baker, Esq., Peter Rosalsky, Esq., Philadelphia, for John McClintic.

Hugh J. Burns, Esq., Michael Erlich, Philadelphia, for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## *OPINION*

Justice BAER.

This Court granted review of the order of the Superior Court affirming Appellant's judgment of sentence to consider whether, under the Sentencing Code's Three Strikes Law, Appellant should have been subject to a sentence enhancement for each crime of violence committed during a single criminal episode. *See* 42 Pa.C.S. § 9714(a)(2). For the follow-

ing reasons, we answer this question in the negative, and thus vacate the order of the Superior Court and remand to the trial court for re-sentencing consistent with this opinion.

The facts underlying this case are not in dispute. Appellant, John McClintic, burglarized and robbed the home of his 85–year–old neighbor while she was sleeping on June 27, 2002, and again on July 5, 2002. On June 27, 2002, at 2:00 a.m., Appellant broke into the victim's home, entered her bedroom where she was sleeping, sat on the edge of the bed, and told her that he had a gun and wanted her money. Appellant then took some cash from a wallet and grabbed the victim's breast, pinched it, and left. Although the victim recognized Appellant as her neighbor, she did not report the incident. Eight days later, Appellant again appeared in the victim's bedroom in the middle of the night, informed the victim he was armed, and demanded money and jewelry. After taking some cash and jewelry, Appellant struck the victim across the thigh and fled.

This time, the victim notified police and identified Appellant as her attacker. Appellant was arrested and the two criminal episodes were consolidated for trial. The jury rejected his defense of mistaken identification, and found him guilty of robbery, burglary, criminal mischief, and indecent assault arising out of the June 27, 2002 incident, and robbery, burglary, criminal mischief and possession of a controlled substance (Appellant had marijuana at the time of arrest) arising out of the July 5, 2002 incident.

At sentencing, the Commonwealth established that Appellant had two prior convictions for crimes of violence and thus qualified as a "three strikes offender" pursuant to the three strikes provision of the Sentencing Code, 42 Pa.C.S. § 9714(a)(2) (Three Strikes Law), which requires enhanced sentences for repeat violent offenders.[1] That provision provides, in pertinent part:

1. Appellant had previously been convicted of aggravated assault as a first-degree felony in connection with a 1987 incident, and for robbery as a felony in the first degree in connection with an incident in 1996.

## § 9714. Sentences for second and subsequent offenses

### (a) Mandatory sentence.—

(1) Any person who is convicted in any court of this Commonwealth of a crime of violence [2] shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement. . . .

(2) Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Proof that the offender received notice of or otherwise knew or should have known of the penalties under this paragraph shall not be required. Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.

**(a.1) Mandatory maximum.—**An offender sentenced to a mandatory minimum sentence under this section shall be sentenced to a maximum sentence equal to twice the mandatory minimum sentence, notwithstanding 18 Pa.C.S. § 1103

**2.** Crime of violence is defined in Section 9714 as follows:

**(g) Definition.—**As used in this section, the term "crime of violence" means murder of the third degree, voluntary manslaughter, aggravated assault as defined in 18 Pa.C.S. § 2702(a)(1) or (2) (relating to aggravated assault), rape, involuntary deviate sexual intercourse, aggravated indecent assault, incest, sexual assault, arson as defined in 18 Pa.C.S. § 3301(a) (relating to arson and related offenses), kidnapping, burglary of a structure adapted for overnight accommodation in which at the time of the offense any person is present, robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii) or (iii) (relating to robbery), or robbery of a motor vehicle, or criminal attempt, criminal conspiracy or criminal solicitation to commit murder or any of the offenses listed above, or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction.

42 Pa.C.S. § 9714(g).

(relating to sentence of imprisonment for felony) or any other provision of this title or other statute to the contrary. 42 Pa.C.S. § 9714(a), (a.1).

For the June 27, 2002 incident, pursuant to Section 9714(a)(2), the trial court sentenced Appellant to two consecutive twenty-five to fifty-year terms of imprisonment, one for the robbery and one for the burglary committed on the same date.[3] With regard to the incident on July 5, 2002, the trial court sentenced Appellant to two consecutive terms of twenty-five to fifty years of imprisonment, one for the robbery and one for the burglary. The trial court ordered that the sentence imposed for the June 27, 2002 incident be served concurrently with the sentence imposed for the July 5, 2002 incident, for an aggregate term of 50 to 100 years.[4]

Appellant challenged the trial court's application of the Section 9714(a)(2) sentence enhancement to both offenses committed on June 27, 2000, in a post-sentence motion, which the trial court denied. Appellant appealed to the Superior Court, arguing that Section 9714(a)(2) authorizes a single sentence enhancement per criminal episode, which, in this case, he defined as each group of related crimes committed at a particular time and place, rather than for each separate crime of violence committed during a single criminal episode. *See Commonwealth v. McClintic,* 851 A.2d 214 (Pa.Super.2004). Appellant maintained that the trial court was limited to imposing only two enhanced sentences, one for the crimes committed on June 27, and another for crimes committed on July 5.[5] Applying rules of statutory construction and examining the

**3.** Without the sentence enhancement, Appellant would have been subject to a ten to twenty-year sentence for the burglary and a ten to twenty-year sentence for the robbery, for a maximum sentence of twenty to forty years.

**4.** The trial court also imposed a consecutive term of one to two years in prison for indecent assault.

**5.** Under Appellant's interpretation of Section 9714, the trial court would be limited to only one enhancement for each criminal episode, meaning that it nonetheless could have sustained its sentencing scheme by directing that the sentences for each episode here present be served consecutive to one another, resulting in the same aggregate sentence of 50 to 100 years.

language of Section 9714(a)(2), the Superior Court disagreed, determining that the crucial term in that section is "current offense." The Superior Court found that this language clearly directs that an enhancement is triggered for each "current offense," not, as Appellant advocated, for all current offenses, the current criminal episode, or the current criminal transaction, regardless of the number of crimes committed at a given time and place.

Despite this conclusion, the Superior Court also noted that accepting Appellant's argument would advance the purpose of the Three Strikes Law, which is to ensure that persons who continue to commit violent crimes are incapacitated by a prison sentence of at least twenty-five years. Noting that the enhancement is considerable, the Superior Court reasoned that mandating enhanced sentences for each individual crime of violence in a given criminal episode or encounter could potentially result in draconian sentences for a single criminal transaction. Despite these concerns, the Superior Court felt constrained by the language of Section 9714(a)(2) to conclude that the trial court correctly imposed an enhanced sentence for each enumerated offense of which Appellant was found guilty.

We granted allowance of appeal to determine whether it was proper for the trial court to impose two separate sentence enhancements of twenty-five to fifty years in prison for two crimes, *i.e.*, robbery and burglary, which occurred during the same criminal episode. Appellant does not challenge the discretionary aspects of his sentence, which this Court lacks jurisdiction to review. *See* 42 Pa.C.S. § 9781(f) ("No appeal of the discretionary aspects of the sentence shall be permitted beyond the appellate court that has initial jurisdiction for such appeals."); *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617, 622 (2002) ("[T]his Court lacks jurisdiction to consider challenges to the discretionary aspects of sentences that the Superior Court has already reviewed.") (Opinion Announcing the Judgment of the Court).

■ Rather, Appellant challenges the legality of his sentence, which presents a pure question of law clearly reviewable by this Court. *See* 42 Pa.C.S. § 9781(a) ("The defendant or the Commonwealth may appeal as of right the legality of the sentence."); *Commonwealth v. Shiffler*, 583 Pa. 478, 879 A.2d 185, 189 (2005); *Commonwealth v. Bradley*, 575 Pa. 141, 834 A.2d 1127, 1131 (2003). This is so because Appellant was convicted of robbery and burglary, both felonies of the first degree. The Crimes Code permits a sentence of no more than twenty years of imprisonment for a first-degree felony. *See* 18 Pa.C.S. § 1103(1). Thus, the 50 to 100 year sentence imposed by the trial court would exceed the statutory maximum and be illegal unless the Three Strikes Law allows for sentence enhancement for both the robbery and burglary committed in the same criminal episode. *See Bradley*, 834 A.2d at 1131 ("An illegal sentence is one that exceeds the statutory limits."). As such, our scope of review is plenary and our standard of review is *de novo*. *See Touloumes v. E.S.C. Inc.*, 587 Pa. 287, 899 A.2d 343, 346 (2006).

■ In determining whether Section 9714(a)(2) permits separate sentence enhancements for each crime committed in the same criminal episode, we are guided by the Statutory Construction Act. The object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S. § 1921(a); *see also Commonwealth v. Conklin*, 587 Pa. 140, 897 A.2d 1168, 1175 (2006). In pursuing that end, we are mindful that the statute's plain language generally provides the best indication of legislative intent. *See Conklin*, 897 A.2d at 1175; *Commonwealth v. Gilmour Mfg. Co.*, 573 Pa. 143, 822 A.2d 676, 679 (2003). "When the words of a statute are clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). In reading the plain language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," while any words or phrases that have acquired a "peculiar and appropriate meaning" must be construed according to that meaning. 1 Pa.C.S. § 1903(a); *Shiffler*, 879 A.2d at 189. Consistent with

the Statutory Construction Act, this Court has repeatedly recognized that rules of construction, such as consideration of a statute's perceived "object" or "purpose," are to be resorted to only when there is an ambiguity in the meaning of the words. *Sternlicht v. Sternlicht,* 583 Pa. 149, 876 A.2d 904, 909 (2005); *Ramich v. WCAB (Schatz Elec., Inc.),* 564 Pa.656, 770 A.2d 318, 322 (2001) ("Only when the language of the statute is ambiguous does statutory construction become necessary.") (citing 1 Pa.C.S. § 1921(c)). Pursuant to Section 1921(c), when the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c). Moreover, while statutes should generally be construed liberally, penal statutes are always to be construed strictly. 1 Pa.C.S. § 1928(b)(1); *Shiffler,* 879 A.2d at 189. Any ambiguity in a penal statute should be interpreted in favor of the defendant. *Id.*

To begin our analysis, we note that both Appellant and the Commonwealth focus on the phrase "current offense," utilized in the first sentence of Section 9714(a)(2). Appellant argues that Section 9714(a)(2) authorizes a single sentence enhancement per criminal episode. The term "offense" in Section 9714(a)(2) is ambiguous, argues Appellant, and, although the definition provided by the Superior Court is plausible, "offense" generally means a group of related crimes committed at a particular time and place. Because of this ambiguity, Appellant urges this Court to look to legislative intent, which

Appellant asserts was to incapacitate repeat offenders from committing further crimes. The triggering offense requires an enhanced sentence because it confirms the offenders' continuing danger to society and the need to counter that threat through incapacitation. Appellant argues that an offender is no more a recidivist when he commits two crimes of violence in one criminal episode than when a similar episode involves only one crime of violence. Thus, the legislature did not intend to stack separate twenty-five year sentences for offenses committed in a single episode, in that such offenses no more suggest an enhanced threat to society or risk of recidivism than does an episode involving one offense.[6]

The Commonwealth counters that, although Appellant's interpretation of Section 9714 could be seen as an improvement over the current version, it reflects an impermissible departure from the language enacted by the General Assembly. The Commonwealth argues that Section 9714(a)(2) is free from ambiguity. The General Assembly chose to use the word "offense," argues the Commonwealth, rather than "transaction," and was clearly familiar with the concept of transaction as it used the word elsewhere in Section 9714(a)(2). The Commonwealth urges us to define offense as it is unambiguously used and defined elsewhere: "a violation of the law; a crime; often a minor one," BLACK'S LAW DICTIONARY 1108 (7th ed.1999); see 1 Pa.C.S. § 1991 (defining crime as "any indictable offense"); 42 Pa.C.S. § 9714(g) (equating the term offense with specific statutory infractions); SENTENCING GUIDELINES IMPLEMENTATION MANUAL §§ 303.3, 303.15 (5th ed.1997) (assigning an offense gravity score to each crime committed, regardless of whether one or more episodes were involved). The Commonwealth argues that far from confusing the words offense and transaction, Titles 18 and 42 carefully distinguish between them. See 42 Pa.C.S. §§ 1123(a)(1), 1515(a)(1),

---

**6.** We also note that rejecting Appellant's contentions would, to some extent, move sentencing discretion from the trial court to the district attorney, who, through charging prerogatives, would be able to influence the number of individual crimes charged for a given criminal episode, which, under the Commonwealth's theory, would each require separate minimum sentences, assuming conviction.

6303(a)(5) (providing that "summary offenses ... arising out of the same criminal episode or transaction" as a delinquent act are within the jurisdiction of the Juvenile Court); 18 Pa.C.S. § 110(1)(ii) (barring a new prosecution for an "offense ... arising from the same criminal episode" as a prior crime of which the accused was previously acquitted or convicted). Because Section 9714(a)(2) is free from ambiguity, the Commonwealth argues, this Court is constrained simply to apply that meaning to the case at hand.

We preface our analysis by reviewing the prior opportunities this Court has had to apply the sentence enhancement in other contexts, where we have determined what constitutes a previous conviction for a crime of violence under Section 9714. First, in *Commonwealth v. Dickerson*, 533 Pa. 294, 621 A.2d 990, 991 (1993), we interpreted the pre–1995 version of the Three Strikes Law, which defined "previous convictions" for "crimes of violence" as any of a list of enumerated offenses if they had "occurred within seven years of the date of the commission of the instant offense." Dickerson raped two women at 9:45 p.m. and 11:00 p.m., respectively, which resulted in two separate criminal prosecutions. He was sentenced for the first attack on September 13, 1988. Following a guilty plea for the second attack, in April, 1989, the trial court applied the mandatory minimum sentence for second-time offenders pursuant to Section 9714(a)(1). The Superior Court reversed, and upon the Commonwealth's appeal, we affirmed. We opined that in recidivist cases, we expect the following sequence of events: "first offense, first conviction, first sentencing, second offense, second conviction, second sentencing." *Dickerson*, 621 A.2d at 992. This was so because of the theory underlying habitual criminal legislation:

> It was not intended that the heavier penalty prescribed for the commission of a second offense should descend upon anyone, except the incorrigible one, who after being reproved, 'still hardeneth his neck.' If the heavier penalty prescribed for the second violation ... is visited upon the one who has not had the benefit of the reproof of a first conviction, then the purpose of the statute is lost.

*Dickerson,* 621 A.2d at 992 (quoting *Commonwealth v. Dickerson,* 404 Pa.Super. 249, 590 A.2d 766, 771 (1991)). We noted that the point of sentence enhancement is to punish more severely offenders who have persevered in criminal activity despite the theoretically beneficial effects of penal discipline. *Id.*

Subsequently, in 2003 we decided *Bradley,* where we were faced with defining "transaction" in Section 9714(a)(2) for purposes of determining which "crimes of violence arising from separate criminal transactions" were predicate offenses for the three-strikes sentence enhancement for a third crime of violence of aggravated assault. *Bradley,* 834 A.2d at 1129. In answering this question, we did not have the benefit of the defendant's argument that Section 9714 should be interpreted according to its recidivist philosophy, *i.e.,* a philosophy suggesting that the "point of sentence enhancement is to punish more severely offenders who have persevered in criminal activity despite the theoretically beneficial effects of penal discipline." *Commonwealth v. Williams,* 539 Pa. 249, 652 A.2d 283, 284 (1994) (quoting *Dickerson,* 621 A.2d at 992). Because the defendant had not raised this claim below, it was waived, and we could not reach it on appeal. *Bradley,* 834 A.2d at 1135. Without considering the recidivist philosophy of Section 9714, we defined a transaction as

> a crime or crimes which were committed by an offender at a single time or in temporally continuous actions that are part of the same episode, event, or incident, or which are conspiracy and the object offense. "Spree" crimes are not part of the same transaction unless they occurred as continuous actions not separated in time by law-abiding behavior.

202 Pa.Code § 303.7(c) (amended effective June 13, 1997). We applied that definition in the context of Section 9714 to conclude that two robberies, which occurred within thirty minutes of each other less than four miles apart, were separate criminal transactions. Justice Saylor authored a concurring opinion recognizing that waiver of the defendant's argument regarding the recidivist philosophy behind Section 9714 limited the analysis available to the majority.

What was waived in *Bradley* was squarely before us in *Commonwealth v. Shiffler,* 583 Pa. 478, 879 A.2d 185 (2005). There, we addressed whether Section 9714 reflects a "recidivist philosophy" and should be construed to allow for heightened punishment for repeat offenders only where their convictions for crimes of violence, and corresponding terms of incarceration, are sequential and each is separated by an intervening opportunity to reform. The defendant in *Shiffler* had pleaded guilty in 1997 to three separate charges of burglary and served concurrent sentences. When the defendant was subsequently sentenced for a 2001 burglary, the Commonwealth argued that he should be sentenced as a third-time offender under Section 9714(a)(2), while the defendant argued that because his prior burglary sentences were imposed concurrently, they should be considered one conviction for purposes of Section 9714(a)(2). The trial court agreed with the defendant and sentenced him as a second-time offender. The Superior Court reversed, holding that defendant was a third-time offender, despite the fact that the defendant pleaded guilty to the prior burglaries on the same day and received concurrent sentences.

On appeal, we analyzed the language of Section 9714(a)(2) in the context of the defendant's statutory ambiguity argument, which looked beyond the subsection's language to consideration of the statute as a whole. The defendant argued that subsection (a)(2) is ambiguous precisely because it is silent as to whether convictions for predicate crimes of violence must occur in sequence, separated by opportunities to reform, and urged this Court to find the Superior Court's ruling inconsistent with the legislative intent evident in the larger statutory scheme. Accepting this invitation, we agreed with Shiffler that it would be absurd to construe Section 9714(a)(2) as intending that he be considered a third-time offender when he had never been sentenced as a second-time offender under subsection (a)(1). In fact, pursuant to *Dickerson,* we noted that because he committed all of the prior burglaries before he was convicted or sentenced for any of them, he could not have been sentenced as a second-time offender. We found it would

be unreasonable to apply reflexively Section 9714(a)(2) to impose third-strike penalties on a party who had never previously been eligible for a second-strike sentence. *Shiffler*, 879 A.2d at 194. Rather, cognizant of the recidivist philosophy and the rule of lenity relied upon by Justice Saylor in his *Bradley* concurrence, we construed the statute to embody a sequential approach to recidivist sentencing.

In forwarding our view of the recidivist philosophy that we found central to the statute, we noted the importance of the "implicit link between enhanced punishment and behavioral reform, and the notion that the former should correspondingly increase along with a defendant's foregone opportunities for the latter." *Shiffler*, 879 A.2d at 195. We saw nothing in the "carefully graduated structure of Section 9714 to suggest that the General Assembly intended to require a sentencing court to simply skip a defendant's second strike and proceed to 'call him out' by applying three strikes." *Id.* We reasoned that a construction of the statute that would treat Shiffler as a third-time offender would be particularly harsh in light of his single previous sentence and opportunity to reform, and would run afoul of the rule of lenity. *Id.* Thus, we viewed Shiffler as a second-time offender under the statute and accordingly reversed the Superior Court.

While these cases deal specifically with predicate offenses, their reasoning and conclusions inform the issue currently before us, which is whether Section 9714(a)(2) requires a separate sentence enhancement for each crime committed during a single criminal episode. The language of Section 9714(a)(2) subjects to mandatory minimum sentences those persons who "at the time of the commission of the current offense" had previously been "convicted of two or more such crimes of violence arising from separate criminal transactions." This language makes clear that Section 9714(a)(2) contemplates offenders that have committed more than three crimes of violence. Section 9714(g) defines "crime of violence" to include burglary and robbery, among others. Thus, the sentence enhancement applies to a person who is convicted of robbery or burglary and has previously been convicted of two

or more crimes of violence arising from separate criminal transactions. There is no dispute that Appellant had previously been convicted of aggravated assault and robbery, both predicate "crimes of violence" as defined in Section 9714(g). Therefore, the language of Section 9714(a)(2) requires a sentence enhancement for Appellant because he was convicted of a crime of violence, robbery or burglary, and "at the time of the commission of the current offense" had two convictions for predicate crimes. The question is whether the sentence enhancement applies twice, once each for the robbery and burglary, even though these crimes were undisputedly part of a single criminal episode.

We begin by addressing the parties' arguments about whether "current offense" is ambiguous as used in Section 9714(a)(2). This phrase is used twice in Section 9714, first in subsection (a)(1) and a second time in subsection (a)(2). To determine its meaning in the context of Section 9714(a)(2), it is necessary to determine its meaning in the context of Section 9714(a)(1). This phrase is comprised of two components: "current," and "offense." There is no dispute that "current" refers simply to the criminal activity that was charged at the current trial, upon which the defendant is being sentenced.

Regarding the word "offense," we agree with the Commonwealth that, within the context of Section 9714, it clearly refers to "crime of violence" as defined in subsection (g). This is so because Section 9714(a)(1), which provides for a sentence enhancement for two-strike offenders, begins "[a]ny person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person has previously been convicted of a crime of violence, be sentenced to a minimum of at least ten years of total confinement...." Only when the offense underlying the second conviction involves a crime of violence can Section 9714(a)(1) be invoked. Therefore, the Section 9714(a)(1) sentence enhancement applies when a person is currently convicted of a crime of violence, and at the time he committed that particular, or current, crime of violence, he had one prior conviction for a crime of

violence. Therefore, "current offense" as used in Section 9714(a)(1) means the crime of violence for which the defendant is currently being sentenced.

Because "offense" as used in Section 9714(a)(1) refers back to "crime of violence," we look no further than Section 9714(g) for the definition of "crime of violence." Crime of violence is defined to include certain enumerated crimes, including, for example, robbery. Plugging this crime of violence into Section 9714(a)(1) requires a sentence enhancement where a person is convicted of robbery, if at the time he or she committed the current robbery, the person had another conviction for a crime of violence.

■ Section 9714(a)(2), which applies a sentence enhancement to three-strike offenders, utilizes the same language as subsection (a)(1), except that it omits the introductory phrase utilized in (a)(1) ("[a]ny person who is convicted in any court of this Commonwealth of a crime of violence . . ."). Instead, the legislature began subsection (a)(2) simply "where the person had at the time of the commission of the current offense. . . ." The phrase "current offense" has the same meaning in both subsections (1) and (2), and, again, refers back "crime of violence" as used in subsection (1). Therefore, Section 9714(a)(2) applies where a person is convicted of, for instance, robbery, and at the time of the current robbery, has two prior convictions of crimes of violence.

■ Therefore, we agree with the Commonwealth that "current offense" as used in 9714(a)(2) is unambiguous and not subject to Appellant's suggested interpretation. We disagree with both parties, however, that defining "current offense" answers the question before us. "Current offense" in Section 9714 means the crime of violence for which the defendant was charged at the current trial and upon which the defendant is being sentenced. Here, Appellant was sentenced for two crimes of violence arising out of the June 27 incident: robbery and burglary. Either of these crimes standing alone qualifies as a "current offense" for which a sentence enhancement is appropriate. The question we must now address is whether

each crime of violence requires its own sentence enhancement. For the reasons that follow, we conclude that the sentence enhancement is proper for one, but not both, crimes of violence.

To answer this question, we look to the language of Section 9714(a)(2), which provides that where the person had, at the time of the current offense, *i.e.*, crime of violence, "previously been convicted of two or more *such crimes of violence arising from separate criminal transactions*," the sentence enhancement applies. 42 Pa.C.S. § 9714(a)(2) (emphasis added). Use of the word "such," a demonstrative adjective, refers to an antecedent, or a category of things previously mentioned. The category of things previously mentioned is "current offense," which we have defined as "crime of violence." Use of the word "such" before the clause "crimes of violence arising from separate criminal transactions" serves to limit the current offense or crimes of violence to which the sentence enhancement applies to those "crimes of violence arising from separate criminal transactions." Thus, close examination of the specific statutory language, the polestar of all statutory construction, reveals that the legislature intended to apply sentencing enhancements for all crimes arising from a criminal transaction, rather than for each individual crime within such transaction.

Moreover, we are mindful of the requirement to construe penal statutes narrowly, 1 Pa.C.S. § 1928(b)(1), and that we are to assume that the General Assembly did not intend an absurd result to flow from application of a statute. 1 Pa.C.S. § 1922. Appellant's situation highlights the potential for absurdity and unreasonableness. At the time of sentencing for the robbery and burglary that occurred on June 27, 2002, the trial court imposed two enhanced sentences, essentially sentencing him as a third-strike offender and again as a fourth-strike offender. But if, theoretically, Appellant were to live long enough to commit a fifth crime of violence upon his release from jail, he could not be sentenced as a fifth-strike offender under our holding in *Dickerson* because the third and fourth strikes were not separated by opportunities to reform.

*Dickerson,* 621 A.2d at 992 (holding that the previous conviction must occur prior to the commission of the subsequent offence). It would be absurd to hold that Appellant can now be sentenced as a third and fourth-time offender, and then, upon commission of a fifth offense in the future, be sentenced as a fourth-time offender.

█ Finally, this construction of the statute, as requiring a sequential approach, is consistent with our decisions in *Dickerson, Shiffler,* and the recidivist philosophy behind the Three Strikes Law, as explained in those cases. Section 9714(a)(2) allows for heightened punishment for repeat offenders only where their convictions for crimes of violence are sequential and each is separated by an intervening opportunity to reform. *See Shiffler,* 879 A.2d at 186. In *Dickerson,* we held that in cases of recidivism, we expect offenses to happen sequentially: first offense, first conviction, first sentence, second offense, second conviction, second sentence. *Dickerson* 879 A.2d 185. The General Assembly ratified this recidivist philosophy, as applied in *Dickerson,* in 2000, when it amended Section 9714. The General Assembly deleted former subsection (b) in its entirety, removing the following qualification of the phrase "previous conviction": "For purposes of this section previous conviction shall include any conviction, whether or not judgment of sentence has been imposed or litigation is pending concerning the conviction." 42 Pa.C.S. § 9714(b)(2), as amended by 1986, Dec. 11, P.L. 1521, No. 165, § 9. As we noted in *Shiffler,*

> the deleted language, which expressly made enhanced sentencing non-contingent upon prior sentencing—*i.e.,* prior opportunities for reform—is evidence that the General Assembly had previously intended a different understanding of this statute than is directed by the existing language and by our decision and holding today.

*Shiffler,* at 196.[7] When amending Section 9714, the General Assembly is presumed to know the state of the law as set

---

**7.** We found further support for the result in *Shiffler* in Section 9714(d), which authorizes an offender to petition the sentencing court for reconsideration of this mandatory sentence if, after sentencing, one of

forth in the decisions of this Court. *See Knox v. Bd. of School Directors of Susquenita Sch. Dist.*, 585 Pa. 171, 888 A.2d 640, 652 (2005). This validation of the result in *Dickerson* supported our conclusion in *Shiffler* that Section 9714 espouses a graduated scheme of recidivist sentencing. *Shiffler*, 879 A.2d at 194. "The generally recognized purpose of such graduated sentencing laws is to punish offenses more severely when the defendant has exhibited an unwillingness to reform his miscreant ways and to conform his life according to the law." *Id.* at 195. Following the recidivist logic, each strike that serves as a predicate offense must be followed by sentencing and, by necessary implication, an opportunity for reform, before the offender commits the next strike.

Here, the burglary, which was the fourth strike for which the second sentence enhancement was imposed, occurred prior to the conviction, sentence, and opportunity to reform incident to the third-strike offense of robbery, and therefore does not comport with *Dickerson* or *Shiffler*. The order of the Superior Court is reversed, and the matter is remanded to the trial court for re-sentencing consistent with this opinion.

Chief Justice CAPPY, Justice CASTILLE and Justice BALDWIN join the opinion.

Justice EAKIN files a dissenting opinion in which Justice NEWMAN joins.

Justice SAYLOR dissents.

Justice EAKIN, dissenting.

Because I believe the trial court lawfully imposed an enhanced sentence for each separate crime of violence committed by appellant, I must dissent. Relevantly, appellant was convicted of a June 27 robbery and burglary, and another robbery and burglary occurring July 5. Because of his past convictions, his sentences for all of these crimes were controlled by the

his previous convictions (*i.e.,* strikes) has since been vacated and the present mandatory sentenced depended on this conviction. 42 Pa.C.S. § 9714(d). We found that this provision clearly reflects a recidivist philosophy.

"Three Strikes Law." 42 Pa.C.S. § 9714(a)(2). The judge made the sentences for the two June 27 crimes consecutive to each other, and the two July 5 crimes consecutive to each other, but concurrent to those for the June 27 crimes.[1]

Section 9714(a)(2) requires a 25–year mandatory minimum sentence be imposed if the defendant had two or more prior convictions of violent crimes when he committed the current offense. 42 Pa.C.S. § 9714(a)(2). The majority interprets "current offense" to mean "the crime of violence for which the defendant was charged at the current trial and upon which the defendant is being sentenced," Majority Op., at 480, 909 A.2d at 1250, and acknowledges either robbery or burglary, "standing alone[,] qualifies as a 'current offense' for which a sentence enhancement is appropriate." *Id.*, at 480, 909 A.2d at 1250. However, the majority then concludes these crimes for some reason do not stand alone, holding that because appellant committed these offenses in the same criminal episode, only the sentence for one of these crimes may be enhanced.

The majority reaches this conclusion by a somewhat labored interpretation of the simple language of the statute, specifically the phrase "previously been convicted of two or more such crimes of violence arising from separate criminal transactions." *Id.*, at 481, 909 A.2d at 1250. The word "such" is somehow said to refer to "current offense," which it clearly does not. The word does indeed refer to an antecedent, as it modifies the words next to it, "crimes of violence," an antecedent term defined previously in the statute. It does not abut, modify, or even refer to "current offense"—it manifestly speaks to a defendant's prior convictions, in this case appellant's record before commission of the present offenses. It certainly does not infer any legislative intent concerning multiple offenses before the sentencing court.

1. That he was sentenced for crimes on two dates may confuse the analysis. Appellant only challenges the requirement that the court enhance each violent crime arising from the same episode, *e.g.*, enhancing both the burglary and robbery of June 27, and likewise enhancing the sentence for both July 5 crimes.

Indeed, as the majority notes, the legislature wanted to be sure the prior "strikes" were distinct, with an opportunity to reform between each; hence, the language in the above phrase dealing with prior convictions. However, nowhere is there an indication the legislature wanted to limit enhancement for multiple violent crimes occurring after two distinct opportunities to reform were not taken. There is no "separate criminal transaction" language when the legislature speaks of the present crimes. The quoted "single transaction" language appears only when speaking of the record that triggers enhancement. "Single transaction" is a concept obviously in the legislature's awareness, making its absence when speaking to enhancement of sentences for the present crimes indicative of a legislative intent to the contrary of the majority's conclusion. I suggest the language is sufficiently clear that we need not even reach legislative intent, but if we do, that intent is manifestly in line with the sentence imposed here.

The events of June 27 may comprise but one transaction if considered for purposes of determining appellant's prior record—it would only be one "strike"—but that is not the question. The question is whether, once sufficient separate prior convictions are established, all subsequent crimes of violence, be they in one episode or 20, are enhanced. It seems clear that once appellant was shown to have been convicted of two prior qualifying crimes of violence, the statute requires enhancement of sentence for every violent felony committed thereafter, not just some of them.

If the statute applies (and all agree it does), which crime from June 27 is enhanced under the majority's premise, the robbery or the burglary? Where is the legislative intent to make the court choose but one, or guidance on which of the two to choose? The language is to the contrary—that the court "shall" impose the enhanced sentence for the offense, not the "transaction." This is not sentencing appellant as a "third and fourth offender"—it is sentencing him as a multiple offender with two prior violent convictions.[2]

2. That the court made the enhanced sentences for each offense consecutive is a matter of discretion, subject to appellate review as would be

This Court has expressed disapproval of allowing defendants a "volume discount" on multiple crimes. *See Commonwealth v. Anderson,* 538 Pa. 574, 650 A.2d 20, 22 (1994) (this Court will ward against permitting "volume discount"); *see also Commonwealth v. Nolan,* 579 Pa. 300, 855 A.2d 834, 839 (2004) (citing *Anderson* ). While *Anderson* and *Nolan* dealt with merger and compulsory joinder, the principle is that a defendant who commits numerous violent offenses in one episode should not be treated identically to the defendant who commits a single violent offense. As the Court in *Anderson* observed:

> If multiple acts of criminal violence were regarded as part of one larger criminal transaction or encounter which is punishable only as one crime, then there would be no legally recognized difference between a criminal who robs someone at gunpoint and a criminal who robs the person and during the same transaction or encounter pistol whips him in order to effect the robbery. But in Pennsylvania, there is a legally recognized difference between these two crimes. The criminal in the latter case may be convicted of more than one crime and sentences for each conviction may be imposed where the crimes are not greater and lesser included offenses.

*Anderson,* at 22.

The policy against discounts for multiple crimes committed during one incident should apply in the context of recidivism, where the defendant has already been convicted of prior violent offenses. Having decided to engage in yet a third (and fourth) violent criminal episode, the defendant may not escape the Three Strikes Law for multiple separate offenses he commits during another criminal episode.

Justice NEWMAN joins this dissenting opinion.

any other sentence question, but it is not violative of the statute. Had the court made the June 27 offenses concurrent to each other, but consecutive to the July 5 crimes, the same result as here would have been reached. Vacating of these sentences would subject appellant to resentencing, at which the trial court could reach the same result, should that be the court's determination of the appropriate sentencing scheme.