**In Re: The NOMINATION PAPERS OF Jennifer L. MANN as Candidate for State Treasurer of the Commonwealth of Pennsylvania**

**John M. Mundie and Helen Ratner, Petitioners.**

Commonwealth Court of Pennsylvania.

Heard March 7, 2008.
Decided March 11, 2008.
Publication Ordered April 2, 2008.

Lawrence M. Otter, Doylestown, for petitioners.

Karen M. Balaban, Harrisburg, for respondent.

OPINION BY Judge LEAVITT.

Before this Court is a petition filed by John M. Mundie and Helen Ratner (Objectors) to set aside the nomination petition of Jennifer L. Mann (Candidate) as a candidate for the Democratic Party's nomination for State Treasurer in the general primary on April 22, 2008. In their petition, Objectors assert that Candidate's petition is fatally defective because it does not have the requisite number of signatures from the required number of counties. For her part, Candidate has moved to dismiss Objectors' petition on several purely legal grounds. For the reasons set forth below, the Court denies Candidate's motion to dismiss and denies Objectors' petition to set aside.

On February 6, 2008, Candidate's nomination petition was filed and accepted by the Secretary of the Commonwealth. Section 912.1(5) of the Pennsylvania Election Code,[1] requires a candidate for State Trea-

---

1. Act of June 3, 1937, P.L. 1333, as amended, 25 P.S. § 2872.1(5), and it states, in relevant part, as follows:

   Candidates for nomination of offices as listed below shall present a nominating petition containing at least as many valid signa- tures of registered and enrolled members of the proper party as listed below:

   * * *

   (5) Treasurer: One thousand including at least one hundred from each of at least five counties.

surer to obtain at least 1000 valid signatures from registered members of the candidate's party to have her name appear on the primary election ballot. In addition, the 1000 signatures must be distributed among at least five counties, with at least 100 signatures per county. Additionally, each page of a nomination petition must be supported by a circulator's affidavit and must be properly notarized. Section 909 of the Election Code, 25 P.S. § 2869.[2]

On its face, Candidate's 118–page petition meets and exceeds the requirements of Section 912.1(5) of the Election Code. Candidate obtained 2,209 signatures from 14 different counties. Seven counties are represented by more than 100 elector signatures: Allegheny, Carbon, Dauphin, Lehigh, Northampton, Philadelphia and Schuylkill counties. The petitions circulated in the remaining counties, Berks, Centre, Cumberland, Montgomery, Mercer, Mifflin, and Westmoreland counties, showed fewer than 100 elector signatures. In addition, each page of Candidate's nomination petition is supported by a circulator's affidavit and is notarized.

On February 21, 2008, at 3:39 p.m., Objectors filed a petition to set aside Candidate's nomination petition. Objectors contend that Candidate's petitions for three of the seven counties lack the required 100 signatures after invalid signatures are stricken. Specifically, Objectors assert that pages 70 through 75, which contain 121 signatures from Allegheny County, must be stricken because the circulators were not residents of Allegheny County. Objectors also contend that pages 115 and 166, which contain 17 signatures from Dauphin County, must be stricken because the circulator was not a resident of Dauphin County. Finally, Objectors assert that pages 80 and 81, which contain 76 signatures from Carbon County, must be stricken for fraud. Pages 80 and 81 were first notarized on February 5, 2008, but the date was thereafter altered to show a date of February 11, 2008. Objectors contend that all signatures on pages 80 and 81 should be stricken or, alternatively, that all signatures dated later than February 5, 2008, should be stricken. Objectors contend that after all the invalid signatures are stricken, Candidate's nomination petition is left with 89 signatures for Allegheny County, 90 signatures for Dauphin County and either 41 or 89 signatures for Carbon County.

On March 4, 2008, Candidate filed a motion to dismiss Objectors' petition to set aside as untimely. Candidate asserts in her motion that Objectors' petition was required to be filed on February 19, 2008, but it was filed two days after that date.[3] As an alternate theory, Candidate contends that Objectors were required to file their objections by 12:00 p.m. on February 21, 2008, but Objectors filed at 3:39 p.m. Finally, Candidate asserts that Objectors' petition must be dismissed because it is styled as a petition to set aside a "nomination paper," whereas Candidate has filed a "nomination petition."

On March 7, 2008, the Court heard argument on the Candidate's motion to dismiss and heard the evidence on Objectors' peti-

---

25 P.S. § 2872.1(5). Section 912.1 was added by the Act of December 12, 1984, P.L. 968.

**2.** The relevant language of Section 909 is set forth *infra*.

**3.** On February 12, 2008, Governor Edward G. Rendell issued Executive Order No.2008–1, which extended the filing deadline for all nomination petitions for candidates for election to public and political party offices from February 12, 2008, to February 14, 2008, due to a sudden and severe snowstorm that struck Pennsylvania on February 12. The Executive Order did not specify the date for the filing of objections to a nomination petition.

tion. Objectors moved into evidence, without objection, pages 70 through 75 of the nomination petition, which contain 121 signatures from Allegheny County, and pages 115 through 116 of the nomination petition, which contain 17 signatures from Dauphin County. The parties stipulated that circulator affidavits for those pages were *facially* defective because the circulators did not reside in the counties from which they collected signatures.[4]

Objectors also moved into evidence, without objection, pages 80 and 81 of the nomination petition, which relate to Carbon County. The circulator affidavit for pages 80 and 81 shows a date of February 11, 2008, which was printed over another number covered by white-out. Objector presented no testimony about the change in date. However, Candidate submitted an affidavit of Joann M. Behrens, the notary that acknowledged pages 80 and 81. Ms. Behrens' affidavit states that she originally notarized these pages on February 5, 2008. However, the circulator obtained additional signatures between February 5 and February 11, 2008. Accordingly, the circulator returned to Ms. Behrens and requested that pages 80 and 81 be renotarized. She did so, changing the earlier number "5" to a number "11."

The parties stipulated that Governor Edward G. Rendell issued an Executive Order on February 12, 2008, extending the deadline to file nomination petitions until 12:00 p.m. on February 14, 2008. The parties stipulated that neither the Prothonotary of the Commonwealth Court nor the Office of the Secretary of the Commonwealth was directed to refuse objections filed after 12:00 p.m. on February 21, 2008.

The matter stands ready for disposition.

**4.** Candidate's counsel stated that the circulator affidavits were not fatally defective because the individual signers were qualified

## CANDIDATE'S MOTION TO DISMISS OBJECTORS' PETITION

Candidate asserts that Objectors' petition must be dismissed. First, she asserts it was not timely filed. Second, she asserts Objectors' petition is fatally flawed because it is styled as a petition to set aside a "nomination paper" rather than a "nomination petition." We consider each theory *seriatim*.

### 1. Timeliness of Petition to Set Aside

█ Candidate contends that Objectors' petition was required to be filed on February 19, 2008. In the alternative, Candidate argues that Objectors' petition had to be filed on February 21, 2008, no later than 12:00 p.m. Objectors filed their petition to set aside on February 21, 2008, at 3:39 p.m.

We begin with a review of the statute governing the deadline for filing objections to a nomination petition. Section 977 of the Election Code provides, in relevant part, as follows:

All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, *within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court specifically setting forth the objections thereto, and praying that the said petition or paper be set aside.* A copy of said petition shall, within said period, be served on the officer or board with whom said nomination petition or paper was filed.... *The office of the Prothonotary of the Commonwealth Court* and the office of the Secretary of the Commonwealth and the various of-

electors and had the requisite knowledge to sign the petitions at issue. No evidence or legal argument was presented on this point.

fices of prothonotary of the court of common pleas *shall be open between the hours of eight-thirty o'clock A.M. and five o'clock P.M.* on the last day to withdraw after filing nomination petitions and *on the last day to file objections to nomination petitions.*

25 P.S. § 2937 (emphasis added). In short, the deadline to file objections does not begin to run until the last day for filing a nomination petition has occurred, whatever that day may be in a particular year. The last day to file a nomination petition this year was February 12, 2008. Governor Rendell, by Executive Order No.2008–1, extended that deadline to February 14, 2008, because of a sudden and severe snowstorm that struck Pennsylvania on February 12, 2008.[5]

Candidate asserts that the Executive Order extended the deadline for filing a nomination petition, but it did *not* extend the deadline for filing objections. It is true that the Executive Order was silent about the deadline for objections, but that fact is irrelevant. It was not necessary for the Governor to address the objection petition deadline in his Executive Order because that deadline is driven by the statutory formula in Section 977. Under Section 977, the last day to file an objection petition is *"seven days after the last day for filing [a] nomination petition." Id.* The Executive Order established the nomination petition filing deadline as February 14, 2008, and Section 977 established the deadline for the objection petition as February 21, 2008. Objector satisfied that deadline.

Alternatively, Candidate argues that the effect of the Executive Order was to extend the deadline to file objections to 12:00 p.m. on February 21, 2008. Candidate

argues that nomination petitions were originally due by 5:00 p.m. on February 12, 2008, and objections thereto were originally due by 5:00 p.m. on February 19, 2008. The Governor's Executive Order extended the first deadline by 43 hours, *i.e.,* until 12:00 p.m. on February 14, 2008. Accordingly, she argues that the second deadline could be extended no more than 43 hours, *i.e.,* from 5:00 p.m. on February 19, 2008, to 12:00 p.m. on February 21, 2008. The Court disagrees.

First, Candidate argues from an incorrect premise, *i.e.,* that the original deadline for filing an objection petition was February 19, 2008, at 5:00 p.m. Section 977 does not support this proposition. It says the deadline is "seven days after the last day for filing [a] nomination petition." 25 P.S. § 2937. It directs the "Prothonotary of the Commonwealth Court" and the "Secretary of the Commonwealth" to have their offices open "on the last day" from 8:30 a.m. to 5:00 p.m. However, it does not forbid either office from opening earlier and closing later. Nor does Section 977 direct either office to reject an objection petition filed before 8:00 a.m. or after 5:00 p.m. In short, there is no hour deadline for the filing of an objection petition.

■ Second, Candidate is mistaken in stating the statutory deadline in terms of hours. The legislature used the word "days" not "hours" in Section 977, and it has directed the courts on what a "day" means. Section 1991 of the Statutory Construction Act defines the term "day" as the "time from midnight to the next midnight." 1 Pa.C.S. § 1991. Stated otherwise, a "day" is a whole day. The legislature could have chosen to use the word "hours" in Section 977 as it did, for exam-

**5.** Candidate does not challenge the Governor's authority to issue the Executive Order at issue or his authority to extend the deadline for either a nomination petition or a petition to set aside a nomination petition.

ple, in Section 13(a) of the Amusement Ride Inspection Act, Act of June 18, 1984, P.L. 384, *as amended,* 4 P.S. § 413(a) (stating that injury reports "shall be submitted to the department [of Agriculture] within 48 hours of the accident.").[6] However, the legislature chose to use the word "days" not "hours" as the measure of the deadline, and we are bound by its choice of words. *Girgis v. Board of Physical Therapy,* 859 A.2d 852, 854 (Pa.Cmwlth.2004) (courts may not insert a word not used by the legislature into a statute).[7]

The last "day" for filing a nomination petition for State Treasurer was February 14, 2008. Under Section 977, "seven days after the last day for filing a nomination petition" is February 21, 2008, anytime between 12:00 a.m. and 11:59 p.m. Because the Executive Order expired on February 14, 2008, it did not, and could not, change the statutorily prescribed method for counting seven days from midnight February 14, 2008, to midnight February 21, 2008.

Objectors filed their petition at 3:38 p.m. on February 21, 2008, which was within seven days—counted from midnight to the next midnight—from the last day to file a nomination petition. Objectors' petition was timely filed, and we reject Candidate's argument to the contrary.

## 2. Incorrectly Styled Petition to Set Aside

■ Candidate next asserts that Objectors' petition cannot be considered because Candidate filed a nomination petition, and Objectors filed a petition to set aside a "nomination paper." Candidate argues that Objectors' petition must be set aside because the relief Objectors requested is impossible to grant.

■ Section 977 of the Election Code states that when an objector files a petition to set aside a "nomination petition or paper," the objector must set forth specific objections. 25 P.S. § 2937. There is a difference between a nomination petition and a nomination paper. As correctly observed by Candidate, a nomination petition is filed by a person seeking to be a candidate in a political party's primary. A "nomination paper" is filed by a minor party candidate to get on the general election ballot. However, the standards for challenging a nomination paper or petition are virtually the same, as are the procedures.

■ Objectors set forth specific objections to Candidate's nomination petition as required by Section 977 of the Election Code. If found to be valid and sustainable objections, they would suffice to strike either a nomination petition or a nomination paper. Accordingly, the relief sought by

---

6. Court rules are also stated, at times, in terms of hours as opposed to days. When a court issues a preliminary injunction involving freedom of speech, the defendant may demand that a final hearing be held within three days and that a "final order shall be filed in the office of the prothonotary within *twenty-four hours* after the close of the hearing. If the final hearing is not held within the three-day period, or if the final order is not filed within *twenty-four hours* after the close of the hearing, the injunction shall be deemed dissolved." PA. R.C.P. No. 1531(f)(1) (emphasis added).

7. The goal of statutory construction is to "ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). Generally, a statute's plain language provides the best indication of legislative intent. *Commonwealth v. McClintic,* 589 Pa. 465, 472, 909 A.2d 1241, 1245 (2006). Courts must "listen attentively to what a statute says[,] [and they] must also listen attentively to what it does not say." *Kmonk–Sullivan v. State Farm Mutual Automobile Insurance Co.,* 567 Pa. 514, 525, 788 A.2d 955, 962 (2001) (citation omitted).

Objectors could be granted. Candidate does not, and cannot, claim that she did not understand that it was Objectors' purpose to keep Candidate off the primary election ballot. Likewise, Candidate does not, and cannot, claim any prejudice from Objectors' use of the word "paper" instead of petition.[8]

Objectors' mistake in using the word "paper" instead of the word "petition" is not a basis for the Court to dismiss Objectors' petition to set aside.

### OBJECTORS' CHALLENGE TO CANDIDATE'S PETITION

We turn, then, to the substance of Objectors' petition. Objectors assert that Candidate lacks the requisite 100 signatures in Allegheny, Carbon and Dauphin Counties. According to Objectors, this leaves Candidate with only four counties with more than 100 signatures.

#### 1. Invalid Circulator Affidavits

■ Objectors assert that pages 70 through 75 for Allegheny County and pages 115 and 116 for Dauphin County must be stricken for material defects in the circulator affidavits. Objectors contend that because the respective circulators were not residents of the county where signatures were collected, their petitions are invalid.

Section 909 of the Election Code provides that each sheet of a nomination petition shall have appended thereto a circulator's affidavit setting forth:

(a) that he or she is a qualified elector duly registered and enrolled as a member of the designated party of the State, or of the political district, as the case may be, referred to in said petition . . . (b) his residence, giving city, borough or township, with street and number, if any; (c) that the signers thereto signed with full knowledge of the contents of the petition; (d) that their respective residences are correctly stated therein; (e) that they all reside in the county named in the affidavit; (f) that each signed on the date set opposite his name; and (g) that, to the best of affiant's knowledge and belief, the signers are qualified electors and duly registered and enrolled members of the designated party of the State, or of the political district, as the case may be.

25 P.S. § 2869. This Court has consistently held that circulators must be registered voters within the specific district referred to in the petition. *See In re Nomination Petition of Shannon,* 132 Pa.Cmwlth. 497, 573 A.2d 638, 640 (1990) (signatures collected in district where circulator was not registered could not be counted); *In re Nomination Petition of McDermott,* 60 Pa.Cmwlth. 486, 431 A.2d 1180, 1181–1182 (1981) (petitions were fatally defective where the circulator was not a resident within the district where the Candidate sought office).

Candidate's nomination petition contains 210 signatures from Allegheny County. Charles L. Caputo and Louis Caputo circulated pages 70 through 75 of the nomination petition for Allegheny County. Because the parties have stipulated that Charles L. Caputo and Louis Caputo do not reside in Allegheny County, all 121

---

**8.** This Court does not dismiss petitions for review that are improperly labeled as an appeal. *See, e.g., Giovagnoli v. State Civil Service Commission (Monroe County Children and Youth Services),* 581 Pa. 655, 868 A.2d 393 (2005) (petition to review was improperly quashed solely because it was not properly captioned as a petition for leave to appeal; remand was ordered to further consider the petition); *Auditor General v. Borough of East Washington,* 474 Pa. 226, 231, 378 A.2d 301, 304 (1977) (admonishing that defects in form alone do not undermine the jurisdiction of the appellate courts).

signatures on pages 70 through 75 must be stricken. This reduces the number of valid signatures from Allegheny County to 89, which is less than the 100 required.

Candidate's nomination petition contains 107 signatures from Dauphin County. James D. Ford circulated pages 115 and 116 of Candidate's nomination petition for Dauphin County. However, James D. Ford does not reside in Dauphin County, but in Cumberland County. Accordingly, all 17 signatures on pages 115 and 116 must be stricken. This reduces the number of valid signatures from Dauphin County to 90, which is less than the 100 required.

The effect of the foregoing determinations is to reduce the number of counties for which Candidate has obtained 100 signatures from seven counties to five counties.

## 2. Defective Notarization of Circulator Affidavit

■ Objectors next assert that the notarization on pages 80 and 81 for Carbon County is defective. According to Objectors, the defect consists of a date change on the notarization of those pages from February 5, 2008, to February 11, 2008. Objectors assert that all signatures on pages 80 and 81 must be stricken as fraudulent, or alternatively, all signatures collected after February 5, 2008, must be stricken.

■ Sworn affidavits ensure the legitimacy of information crucial to the election process. *In re Nomination Petition of Cianfrani*, 467 Pa. 491, 494, 359 A.2d 383, 384 (1976). A notary's certificate of

acknowledgement is *prima facie* evidence of the due execution of the instrument. *Sheaffer v. Baeringer*, 346 Pa. 32, 36, 29 A.2d 697, 699 (1943). However, any signatures obtained after the circulator and notary completed the circulator's affidavit are invalid. *In re Nomination Paper of Nader*, 865 A.2d 8, 98 (Pa.Cmwlth.2004). The Election Code will be strictly enforced to prevent fraud. *In re Petition of Cioppa*, 533 Pa. 564, 570, 626 A.2d 146, 149 (1993). "It is clear that the provisions of the election law regulating nomination papers and affidavits are not mere technicalities but necessary measures to prevent fraud and preserve the integrity of the election process." *In re Nomination Papers of Carlson*, 60 Pa.Cmwlth. 170, 430 A.2d 1210, 1212 (1981).

Pages 78 through 82 of Candidate's nomination petition contain 117 signatures from Carbon County. On page 80 there are 33 signatures, and on page 81 there are 43 signatures. Each has a circulator's affidavit, which was notarized on February 11, 2008. However, the "11" was written over another number that had been covered with white-out. Other than placing pages 80 and 81 into the record, Objectors did not introduce any additional evidence to support the claim of fraud.

However, Candidate submitted an affidavit of Joann M. Behrens, the notary who acknowledged pages 80 and 81. Behrens stated in her affidavit that she re-notarized pages 80 and 81 on February 11, 2008, and that she changed the date. It is well-established that affidavits may be submitted to correct mistakes made by notaries.[9]

---

9. *See In re Nomination Petitions of Duncan*, 102 Pa.Cmwlth. 99, 516 A.2d 776 (1982) (notary's failure to administer an oath to any of the circulators could be amended by affidavit to cure the defect); *In re Nominating Petition of Kloiber*, 26 Pa.Cmwlth. 50, 362 A.2d 484

(1976) (circulator's affidavit witnessed by notary, but not containing a notary seal, held to be an amendable defect); *In re Nomination Petition of Graham*, 133 Pa.Cmwlth. 71, 574 A.2d 1182 (1990) (presentation of completed affidavit form to the notary by the candidate

In this case, the uncontroverted evidence established that the notary did not make a mistake, but, rather, actually re-acknowledged the circulator's affidavit.

Accordingly, the signatures on pages 80 and 81 are valid and cannot be stricken. This leaves 117 valid signatures from Carbon County.

### CONCLUSION

This Court had jurisdiction to consider Objectors' petition to set aside. It was timely filed and not fatally defective simply because it was styled as an objection to a nomination "paper," as opposed to "petition." Candidate needed 100 valid signatures of registered electors who are enrolled members of Candidate's party from at least five different counties. Candidate presented over 1,000 valid signatures, including at least 100 valid signatures of electors from five different counties, *i.e.,* Carbon, Lehigh, Northampton, Philadelphia and Schuylkill Counties. Thus, Objectors' petition to set aside the Candidate's nomination petition must be denied.

### *ORDER*

AND NOW, this 11th day of March, 2008, the Candidate's motion to dismiss the Objectors' petition is hereby DENIED, and the petition filed by John M. Mundie and Helen Ratner (Objectors) to set aside the nomination petition of Jennifer L. Mann (Candidate) as a candidate for the Democratic Party in the general primary for the Office of State Treasurer, is hereby DENIED.

It is further ORDERED that each party shall bear their own costs.

The Secretary of the Commonwealth of Pennsylvania is DIRECTED to include

Jennifer L. Mann on the ballot as candidate for the Office of State Treasurer of the Commonwealth of Pennsylvania.

The Chief Clerk is hereby DIRECTED to notify the parties hereto and their counsel of this order and also to certify a copy hereof to the Secretary of the Commonwealth of Pennsylvania.

---

and/or circulator is a representation that fulfills the "depose and say" requirement of the oaths); *In re Nomination Petition of Kersten,* 525 Pa. 65, 575 A.2d 542 (1990) (amendment allowed when circulator was also notary who notarized affidavit).