Hillsborough-northern judicial district
No. 2006-871

## THE STATE OF NEW HAMPSHIRE

v.

## JOHN BURGESS

Argued: November 13, 2007
Opinion Issued: February 26, 2008

*Kelly A. Ayotte*, attorney general (*Esther B. Piszczek*, assistant attorney general, on the brief and orally), for the State.

*Theodore Lothstein*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. The defendant, John Burgess, was convicted by a jury of attempted escape, *see* RSA 629:1 (2007); RSA 642:6 (2007), and possessing an implement for escape, *see* RSA 642:7 (2007). The Superior Court (*Lewis*, J.) sentenced him to ten to thirty years in prison on each indictment, to be served concurrent with each other and consecutive to sentences the defendant already was serving. On appeal, the defendant argues that the trial court violated his privilege against self-incrimination under Part I, Article 15 of the New Hampshire Constitution by using his silence as a factor in sentencing. We affirm.

I

The following facts were adduced at trial and sentencing. Between October 25 and October 27, 2004, the defendant appeared in Merrimack County Superior Court for a judicial proceeding. At the time, the defendant was serving sentences for burglary and accomplice to theft. Each morning of the proceeding, Lieutenant Leo Degreenia of the Merrimack County Sheriff's Department placed a leg brace on the

defendant while he was in the holding cell in the basement of the courthouse. The leg brace contained a locking mechanism that prevented the defendant's knee joint from bending, which required the defendant to walk stiff-legged. While sitting, however, the defendant could unlock the brace by pulling a lever, thus allowing his knee to bend. The purpose of the brace was to prevent the defendant from running.

On October 27, 2004, Deputy Sheriff James Moran escorted the defendant from the holding cell to the courtroom. At the end of the proceeding, pursuant to normal practice, the trial court ordered that the defendant be returned to the holding cell. Around this time, Deputy Sheriff Wayne Robie noticed the defendant "[l]ooking at the different entrances and exits and the window areas in the courtroom, seeing where each bailiff was positioned . . . ." Moran approached the defendant to escort him back to the holding cell. When the defendant finished speaking with his attorney, Moran directed the defendant to face the front of the courtroom and place his hands behind his back so that he could handcuff him. The defendant placed his right hand behind his back, and as Moran attempted to handcuff him, the defendant "turned toward the right and bolted towards the doors." Moran and another deputy sheriff yelled for the defendant to stop. Before he reached the exit door, the defendant ran into Deputy Sheriff Robert Croteau, who was stationed at the exit. Both individuals were forced through the doors into the small hallway between the inner and outer doors to the courtroom. Croteau then tackled the defendant. The defendant continued to resist until several other court officers arrived to subdue him. The defendant was handcuffed and taken to the holding cell.

Later, when Deputy Sheriff Dennis Crawford unlocked the brace to remove it, he observed part of a shoelace tied around the leg strap. The shoelace was holding the locking pin up such that the lock would not work properly while standing. As a result, the defendant could bend his knee and run in a normal fashion. The lace had been cut from one of the defendant's shoes.

During a subsequent interview, Lieutenant Robert Krieger of the Merrimack County Sheriff's Department asked the defendant where he had obtained the lace used to disable the lock. The defendant responded: "You know where I got the shoelace from. You have my shoes." Krieger testified that, when he asked the defendant how he thought he would get out of the courthouse, the defendant "said it wasn't a very well thought out plan and laughed . . . ."

At trial, the defendant admitted that he had used a paper clip that he found on the floor of the holding cell to cut his shoelace, which he then used to keep the brace's lock open. He testified that he disabled the lock on

all three days of the proceeding, not with the intent to escape, but to prevent the brace from "pinching" him. The defendant further testified that when he turned away from Moran, he did not intend to escape, but was trying "to get out of being grabbed by a number of people." He was "upset," "nervous," and "[s]omewhat afraid" because he felt that a number of court officers were "moving very aggressively towards" him. Thus, when Moran reached for his arm, he "panicked a little bit" and "lunged toward the door."

With respect to his interview with Krieger, the defendant admitted to informing Krieger that he had used a lace from his shoe to disable the brace's lock. However, he did not "think" that he "said it wasn't a very well thought out plan." Instead, the defendant testified that he "said that was not my plan or [he] didn't have a plan to do that."

The jury found the defendant guilty of attempted escape and possessing an implement for escape. Prior to sentencing, the defendant refused to speak to the person conducting the presentence investigation (PSI). *See generally* RSA 651:4 (2007). At the sentencing hearing, the State requested the maximum extended term sentence of ten to thirty years, consecutive to the sentences the defendant already was serving. *See* RSA 651:6 (2007). The State based this request upon: (1) the defendant's character; (2) prior criminal history, which included, among other convictions, three prior convictions for escape; (3) the nature and circumstances of the offenses; and (4) potential for deterrence and rehabilitation. Defense counsel asked the trial court for leniency, contending, in relevant part:

> Unfortunately, Mr. Burgess, as he sits before you, is a man without hope, without a future and without a family and I . . . would ask the Court for a little mercy in this case because I don't think it's likely that given his current situation that Mr. Burgess is ever going to walk out of prison as a young man, a healthy man and a free man. . . . I think this was an impulsive and irrational act. I don't think—see how any individual could have expected to escape from a courtroom with six guards nearby.

The defendant did not address the court during the hearing.

The trial court imposed the maximum extended term sentence. In support of this sentence, the court stated, in pertinent part:

> I very carefully considered this matter, given it a good deal of thought, read the Pre-Sentence report, listened to arguments of counsel, considered the defendant's situation and have concluded that I'm going to go along with the State's position in this matter.

There isn't any real basis for mercy as asked for by defense counsel in this case. We have a defendant who has an extended record, has simply not accepted over the years in any constructive way his situation, made matters deliberately worse for himself time and time again. The tragedy involved here is entirely attributable to Mr. Burgess' actions. *He has not cooperated in terms of the Pre-Sentence report in terms of telling any—or talking to me as he's had opportunities to do about his situation.* The record is a fairly deplorable one and at the same time the kind of crimes we're talking about, the attempted escape and the implements of escape go to the very integrity and safety of the personnel that are involved with law enforcement and the judicial process and there needs to be a very stern message sent out that this is simply not going to be tolerated at all.

To the degree that any of this had to do with impulsivity on the part of Mr. Burgess, Mr. Burgess in my mind clearly knew what he was doing, has done this a number of times in the past and could very well have much more seriously injured the people involved, let alone the injury to the process itself.

(Emphasis added.)

The defendant subsequently moved to vacate the sentence. Relying upon *Mitchell v. United States*, 526 U.S. 314 (1999), the defendant argued that the trial court violated his privilege against self-incrimination under both the New Hampshire and United States Constitutions by considering his failure to participate in the PSI and his silence at the sentencing hearing. The State responded that, despite "any alleged consideration that may have been given to the defendant's silence prior to, or during, the sentencing hearing," the trial court considered several other aggravating factors that supported the sentence. To alleviate any uncertainty on the issue, the State asked the trial court to clarify whether it "considered the defendant's silence at the sentencing hearing or his lack of participation in the pre-sentence investigation as factors in his sentencing."

In a written order, the trial court explained its decision:

[T]he Court did not consider the defendant's silence or his lack of involvement in the Pre-sentence Report preparation process in a manner proscribed by *Mitchell* or other pertinent authorities. As the sentencing hearing transcript reflects ..., the Court considered the defendant's silence at the sentencing hearing and his declination to participate in the pre-sentence investigation process in the context of dealing with the plea by his counsel for leniency or mercy, and in assessing the degree, if at all, the

defendant had any rehabilitation potential, or ability to alter his undisputed long history of disturbing criminal activity, both in and out of prison, including three (3) prior convictions of Escape. The defendant's silence and declination obviously did not result in the Court being presented any evidence from the defendant through these means pertaining to rehabilitation or leniency. The Court did not consider the defendant's silence at the sentencing hearing, or his lack of involvement in the pre-sentence investigation process, for any other purpose.

Citing several cases from other jurisdictions, the trial court concluded that it "did not ... impermissibly punish the defendant for exercising his right to remain silent," but, instead, "acted in a manner deemed appropriate by the great weight of authority." The court therefore denied the defendant's motion.

On appeal, the defendant argues that the trial court violated his privilege against self-incrimination under Part I, Article 15 of the New Hampshire Constitution by using his silence as a factor in sentencing. The defendant does not assert a violation of his federal constitutional rights. The State counters that the trial court limited its consideration of the defendant's silence to its assessment of defense counsel's plea for mercy and the defendant's potential for rehabilitation, and, therefore, its consideration of the defendant's silence was proper. Additionally, the State contends that because the trial court was presented with numerous other aggravating factors supporting the imposed sentence, the record establishes an objective basis sufficient to sustain the trial court's discretionary judgment.

## II

"The State Constitution requires the trial court to consider numerous objective factors before imposing any sentence .... Part I, Article 18 ... requires the trial court to consider all the relevant factors necessary to the exercise of its discretion," including "whether the sentence imposed will meet the traditional goals of sentencing—punishment, deterrence and rehabilitation." *Duquette v. Warden, N.H. State Prison*, 154 N.H. 737, 746 (2007) (quotation omitted). "Although a sentencing judge has broad discretion to choose the sources and types of evidence upon which to rely in imposing sentence, that discretion is not unlimited." *State v. Lambert*, 147 N.H. 295, 295-96 (2001). For example, "judges in sentencing should not rely upon allegations of other crimes by the defendant when such allegations are unsubstantiated, resolved by acquittals, or the product of speculation." *Id.* at 296 (quotation omitted). "If

improper evidence is admitted at sentencing, the sentence imposed must be reconsidered unless the trial court clearly gave that evidence no weight." *Id.* (quotation omitted). While we normally review a trial court's sentencing decision under our unsustainable exercise of discretion standard, *id.*, where, as here, the defendant asserts that his constitutional rights have been violated as a result of the trial court's sentencing decision, we review that decision *de novo. See State v. Decato,* 156 N.H. 570, 573 (2007) ("We review questions of constitutional law *de novo.*").

The defendant asserts that the trial court violated his privilege against self-incrimination under Part I, Article 15 of the State Constitution. Part I, Article 15 provides, in relevant part: "No subject shall be . . . compelled to accuse or furnish evidence against himself." N.H. CONST. pt. I, art. 15. The privilege against self-incrimination found in the Fifth Amendment to the Federal Constitution is comparable in scope to the privilege afforded to the defendant under Part I, Article 15, *Knowles v. Warden,* 140 N.H. 387, 391 (1995); *see* U.S. CONST. amend. V, although, in certain instances, we have determined that Part I, Article 15 provides greater protection to a defendant than does the Fifth Amendment, *see, e.g., State v. Roache,* 148 N.H. 45, 49 (2002). Here, because the defendant does not assert a federal constitutional claim, we address his claim under the State Constitution, and cite federal law only as it aids our analysis. *See, e.g., State v. Barkus,* 152 N.H. 701, 706 (2005).

■ We have never addressed whether and to what extent the privilege against compelled self-incrimination applies at sentencing. We have broadly stated that this privilege "not only permits [a defendant] to refuse to testify against himself at a criminal trial . . . , but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Knowles,* 140 N.H. at 391 (quotation omitted). The United States Supreme Court has held that a defendant's Fifth Amendment right against self-incrimination "is fulfilled only when a criminal defendant is guaranteed the right to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty for such silence." *Estelle v. Smith,* 451 U.S. 454, 468 (1981) (quotation omitted).

In *Mitchell,* the United States Supreme Court specifically extended the privilege against self-incrimination to sentencing. The Court held that a court may not draw an adverse inference from a defendant's silence at sentencing in determining facts relating to the circumstances and details of the crime. *Mitchell,* 526 U.S. at 328. In that case, without any plea agreement, the defendant pleaded guilty to distributing cocaine. *Id.* at 317.

However, she explicitly reserved the right to contest the amount of cocaine at issue. *Id.* At sentencing, the defendant "put on no evidence" and did not "testify to rebut the Government's evidence about drug quantity." *Id.* at 319. After the testimony, "the District Court ruled that, as a consequence of her guilty plea, [the defendant] had no right to remain silent with respect to the details of her crimes." *Id.* In sentencing the defendant, the District Court credited testimony indicating that the defendant "had been a drug courier on a regular basis" partly because the defendant did "not testify[] to the contrary." *Id.* (quotation omitted).

The United States Supreme Court held that the defendant's guilty plea did not constitute a waiver of the privilege against self-incrimination with respect to all the crimes comprehended in the plea, *id.* at 321-25, and, further, that, because sentencing proceedings are part of a criminal case, the privilege applies at sentencing. *Id.* at 327. It explained that "[w]here the sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony." *Id.* at 326. In contrast, where "the sentence has been fixed and the judgment of conviction has become final," "there is no basis for the assertion of the privilege" because "there can be no further incrimination." *Id.* Noting that "[t]he normal rule in a criminal case is that no negative inference from the defendant's failure to testify is permitted," *id.* at 327-28 (citation omitted), the Supreme Court held that this rule against negative inferences applies with equal force at the sentencing phase "with regard to factual determinations respecting the circumstances and details of the crime." *Id.* at 328-29. However, the Court explicitly left open the question of whether a sentencing court may consider a defendant's silence as it "bears upon the determination of a lack of remorse, or upon acceptance of responsibility for purposes of the downward adjustment provided in § 3E1.1 of the United States Sentencing Guidelines (1998)." *Id.* at 330.

The defendant urges us to apply the principles of *Mitchell* here and hold that "the trial court erred in considering [his] silence during the PSI process and at sentencing as a factor supporting the imposition of a lengthy prison sentence." He contends that the distinction between a court drawing a negative inference from silence with regard to the facts and circumstances of a crime and drawing the inference to determine whether the accused deserves leniency or is amenable to rehabilitation is "unworkable." The defendant submits that a trial court would always "in some measure penaliz[e] the accused for exercising his right to trial and testifying as to his innocence" if it drew "an adverse inference from the accused's silence when considering amenability to rehabilitation or deservingness of leniency." Thus, the defendant urges us to hold under our

constitution that "a sentencing court may not draw any adverse inferences from the accused's silence during the sentencing process."

The defendant makes two distinct, albeit somewhat related, arguments. First, he argues that the trial court erred in drawing an adverse inference from his silence at the sentencing hearing. Second, he contends that the trial court improperly drew a negative inference from his failure to participate in the PSI. We address each argument in turn.

### III

A trial court has "broad discretion to choose the sources and types of evidence upon which to rely in imposing sentence." *Lambert*, 147 N.H. at 295. One such relevant factor is a defendant's lack of remorse. *State v. Hammond*, 144 N.H. 401, 408 (1999). While we have never previously articulated them, the theoretical grounds for considering such evidence are that it may reflect upon a defendant's character and be pertinent in determining whether rehabilitation efforts would be successful. *State v. Barnes*, 637 A.2d 398, 402-03 (Conn. App. Ct. 1994); *Jackson v. State*, 643 A.2d 1360, 1379 (Del. 1994); *see also State v. Sweeney*, 124 N.H. 396, 401 (1983) (noting that a court may properly consider the defendant's character and potential for rehabilitation in determining sentence); *Jennings v. State*, 664 A.2d 903, 908 (Md. 1995) (summarizing cases). *But see* Ward, *Sentencing Without Remorse*, 38 LOY. U. CHI. L.J. 131 (Fall 2006) (arguing that remorse should not be relevant in criminal sentencing because its application does not serve the prominent theories of punishment).

In this case, the trial court appears to have reasoned that, because the defendant was silent at the sentencing hearing, he lacked remorse, and, thus, had a decreased potential for rehabilitation. Consequently, the trial court declined defense counsel's plea for leniency and imposed the maximum extended term sentence. The question therefore is whether the trial court violated the defendant's right against self-incrimination by basing its sentence in part upon the defendant's failure to express remorse.

■ It is well established that a court cannot punish a defendant for standing trial rather than pleading guilty. *United States v. Jackson*, 390 U.S. 570, 583 n.20 (1968); *see also Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."). While a trial court may consider a defendant's false trial testimony as a factor in sentencing, *United States v. Grayson*, 438 U.S. 41 (1978), it may not constitutionally increase a defendant's punishment because he refuses to

admit his guilt after conviction, *Thomas v. United States*, 368 F.2d 941 (5th Cir. 1966); *cf. Minnesota v. Murphy*, 465 U.S. 420, 434 (1984). Even at the time of sentencing, a defendant has "not been finally and irrevocably adjudged guilty" since "[s]till open to him [ar]e the processes of motion for new trial (including the opportunity to discover new evidence), appeal, petition for certiorari, and collateral attack. Indeed, appeal is now an integral part of the trial system for finally adjudicating the guilt or innocence of a defendant." *Thomas*, 368 F.2d at 945. Allowing a sentencing court to penalize a defendant for not admitting guilt after a jury has convicted him would jeopardize a defendant's right to these post-trial processes, *Poteet v. Fauver*, 517 F.2d 393, 396 (3d Cir. 1975), and chill his right to remain silent, *Thomas*, 368 F.2d at 945. Accordingly, after a jury trial, a sentencing court may not constitutionally consider a defendant's refusal to admit guilt as a factor in sentencing. *See Brown v. State*, 934 P.2d 235, 245-46 (Nev. 1997).

However, even though a court may not constitutionally consider a defendant's refusal to admit guilt as a factor in sentencing, some courts hold that a defendant's silence after trial may be considered as a failure to accept responsibility or failure to express remorse, and thus indicate that an individual has a reduced potential for rehabilitation, without violating the defendant's right to remain silent. *See, e.g., United States v. Johnson*, 903 F.2d 1084, 1090 (7th Cir. 1990); *Barnes*, 637 A.2d at 402-03. These courts draw a

> "[d]istinction between imposing a harsher sentence upon a defendant based on his or her lack of remorse, . . . and punishing a defendant for his or her refusal to admit guilt, . . . the latter being a violation, *inter alia*, of a criminal defendant's right to due process, to remain silent and to appeal."

*State v. Meister*, No. 30152, 2007 WL 2821981, at *15 (Idaho Ct. App. Oct. 1, 2007) (quoting *State v. Kamana'o*, 82 P.3d 401, 407 (Haw. 2003)); *see also Bergmann v. McCaughtry*, 65 F.3d 1372, 1379 (7th Cir. 1995); *Barnes*, 637 A.2d at 402-03; *Jennings*, 664 A.2d at 910; *People v. Wesley*, 411 N.W.2d 159, 162 (Mich. 1987) (plurality opinion); *State v. Tiernan*, 645 A.2d 482, 486 (R.I. 1994); *State v. Loveland*, 684 A.2d 272 (Vt. 1996); *cf. People v. Ward*, 499 N.E.2d 422, 425-27 (Ill. 1986); *State v. Fuerst*, 512 N.W.2d 243, 247 (Wis. Ct. App. 1994). In these jurisdictions, unless the sentencing court suggests that the defendant's admission of guilt would reduce his sentence, no constitutional right is violated when the court considers the defendant's silence as a failure to accept responsibility or express remorse for the limited purpose of determining whether

rehabilitation efforts would be fruitful. *Meister*, 2007 WL 2821981, at *15; *Barnes*, 637 A.2d at 402-03; *Wesley*, 411 N.W.2d at 162-63.

Other courts have rejected this distinction and hold that a sentencing court may not consider a defendant's silence at sentencing as indicating a lack of remorse without violating his privilege against self-incrimination. *See State v. Hardwick*, 905 P.2d 1384, 1391 (Ariz. Ct. App. 1995) ("A convicted defendant's decision not to publicly admit guilt [by expressing remorse] is irrelevant to a sentencing determination, and the trial court's use of this decision to aggravate a [d]efendant's sentence offends the Fifth Amendment privilege against self-incrimination."); *People v. Young*, 987 P.2d 889, 894 (Colo. Ct. App. 1999) ("court cannot constitutionally consider [a defendant's] lack of an expression of remorse as an aggravating circumstance"); *State v. Shreves*, 60 P.3d 991, 996 (Mont. 2002) ("sentencing court may not draw a negative inference of lack of remorse from the defendant's silence at sentencing where he has maintained, throughout the proceedings, that he did not commit the offense of which he stands convicted—i.e. that he is actually innocent"); *Brown*, 934 P.2d at 246 ("requiring [the defendant] to either express remorse or receive a harsher sentence violated [his] Fifth Amendment rights"); *State v. Williams*, 389 S.E.2d 830, 833 (N.C. Ct. App. 1990) ("[W]hile an expression of remorse might have mitigated th[e] defendant's sentence, the lack of such an expression, which took the form of exercising the right against self-incrimination cannot be an aggravating factor in the defendant's sentence."); *cf. Jackson*, 643 A.2d at 1380. Noting that "[e]ven courts which permit consideration of a lack of remorse note that there is a fine line between punishing a defendant for remaining silent and proper consideration of his failure to show remorse," *Jackson*, 643 A.2d at 1380 (citing *Johnson*, 903 F.2d at 1090), the courts generally reason that, because the terms contrition and remorse "connote an acknowledgement of guilt on the part of a defendant," a "[d]efendant's lack of contrition is, for legal purposes, tantamount to a refusal to admit guilt," *Hardwick*, 905 P.2d at 1391; *cf. Kamana'o*, 82 P.3d at 407 ("Acknowledgement or admission of ... 'wrongdoing,' ... is foundational to the expression of 'remorse.'"). Accordingly, since "contrition or remorse necessarily imply guilt, it would be irrational or disingenuous to expect or require one who maintains his innocence to express contrition or remorse." *Hardwick*, 905 P.2d at 1391; *see also Young*, 987 P.2d at 894-95 (where a defendant maintains his innocence throughout the criminal process, he has "no opportunity to express remorse"); *Brake v. State*, 939 P.2d 1029, 1033 (Nev. 1995) (sentencing court violated defendant's Fifth Amendment rights where defendant had "maintained his innocence of the crime for

which he was ultimately convicted and was unable to express remorse and admit guilt . . . without foregoing his right to not incriminate himself").

While these courts recognize that "rehabilitation is an important factor to consider at sentencing and . . . that lack of remorse can be considered as a factor in sentencing," they reason that allowing a court to draw an adverse inference from a defendant's silence at sentencing when he has maintained his innocence throughout the proceedings

> would force upon the defendant the Hobson's choice . . . which is condemned by the Fifth Amendment[;] . . . specifically, that the defendant must either incriminate himself at the sentencing hearing and show remorse (with respect to a crime he claims he did not commit) or, in the alternative, stand on his right to remain silent and suffer the imposition of a greater sentence.

*Shreves*, 60 P.3d at 996-97; *see also Ward*, 499 N.E.2d at 429 (Simon, J., dissenting); *Wesley*, 411 N.W.2d at 168 (Brickley, J., concurring); *cf. Williams*, 389 S.E.2d at 833.

We agree with the courts rejecting the distinction between using a defendant's silence to infer a failure to express remorse and using it to punish a defendant for refusing to admit guilt. "Remorse" is defined as "a gnawing distress arising from a sense of guilt for past wrongs," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1921 (unabridged ed. 2002), or "deep and painful regret for wrongdoing," RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1214 (1966). Thus, for a defendant to truthfully express remorse, he must to some degree acknowledge wrongdoing or guilt. *See Ward*, 499 N.E.2d at 429 (Simon, J., dissenting) ("[a] defendant . . . can hardly be expected to be remorseful for something he contends he did not do" (quotation omitted)). In this respect, we see no practical difference between a defendant's failure to express remorse and his refusal to admit guilt. *See Wesley*, 411 N.W.2d at 165, 166 & n.2 (Brickley, J., concurring) (criticizing distinction as illusory, unworkable, and unmanageable).

In either case, the defendant must admit wrongdoing and jeopardize his post-trial remedies, testify falsely and risk a perjury conviction, or remain silent and risk obtaining a greater sentence. *South Dakota v. Neville*, 459 U.S. 553, 563 (1983); *see Thomas*, 368 F.2d at 945. The privilege against self-incrimination "prevents the state from forcing the choice of this 'cruel trilemma' on the defendant." *Neville*, 459 U.S. at 563. Accordingly, because the only affirmative way for a defendant who maintains his innocence throughout the criminal process to express remorse at sentencing is to forego his right to remain silent, *see Jackson*,

643 A.2d at 1379; *Brake*, 939 P.2d at 1033, a court may not constitutionally draw an adverse inference of lack of remorse from the defendant's silence at sentencing.

We note that a majority, if not all, of the Federal Circuit Courts of Appeal that have addressed the issue left open in *Mitchell* have held that it is not a Fifth Amendment violation to deny a reduction of a sentence under the acceptance of responsibility provision of the Sentencing Guidelines, section 3E1.1, because a defendant refuses to admit guilt or express remorse. *See United States v. Cohen*, 171 F.3d 796 (3d Cir. 1999); *United States v. Larkin*, 171 F.3d 556 (7th Cir. 1999); *United States v. Villasenor-Cesar*, 114 F.3d 970 (9th Cir. 1997); *United States v. Clemons*, 999 F.2d 154 (6th Cir. 1993); *United States v. Frazier*, 971 F.2d 1076 (4th Cir. 1992); *United States v. Singer*, 970 F.2d 1414 (5th Cir. 1992); *United States v. Lyles*, 946 F.2d 78 (8th Cir. 1991); *United States v. Rogers*, 921 F.2d 975 (10th Cir. 1990); *United States v. Parker*, 903 F.2d 91 (2d Cir. 1990); *United States v. Henry*, 883 F.2d 1010 (11th Cir. 1989); *United States v. Paz Uribe*, 891 F.2d 396 (1st Cir. 1989). *But see United States v. Frierson*, 945 F.2d 650 (3d Cir. 1991); *United States v. Oliveras*, 905 F.2d 623 (2d Cir. 1990); *United States v. Perez-Franco*, 873 F.2d 455 (1st Cir. 1989). These courts reason that, in refusing to grant a reduction of a sentence under section 3E1.1, a sentencing court is simply denying a benefit to the defendant, rather than imposing a penalty upon his exercise of the privilege. *See, e.g., Frazier*, 971 F.2d at 1081-82.

We do not find this reasoning persuasive outside the unique structure of section 3E1.1. Under section 3E1.1, if a "defendant clearly demonstrate[s] acceptance of responsibility for his offense," the sentencing court may "decrease the offense level by 2 levels." U.S.S.G. § 3E1.1; *see United States v. Booker*, 543 U.S. 220 (2005) (declaring unconstitutional provisions of the Federal Sentencing Act making the guidelines mandatory and setting forth standard of review on appeal). The purpose of this section is to give a lower sentence to a defendant who, in a timely fashion, takes responsibility for his actions. U.S.S.G. § 3E1.1 comment (backg'd). Consistent with this purpose, the section "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1 comment (application n.2). While "[c]onviction by trial does not automatically preclude a defendant from consideration for such a reduction," it is only in "rare situations [that] a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial." *Id.* For example, the section may apply "where a defendant goes to trial to assert and preserve issues that do not

relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." *Id.* In these instances, however, "a determination that a defendant has accepted responsibility will be based primarily upon *pre-trial* statements and conduct." *Id.* (emphasis added).

Read in this context, it is clear that section 3E1.1 simply encourages guilty pleas by offering a defendant the benefit of a lower sentence in exchange for taking responsibility early. *See Frazier*, 971 F.2d at 1084. It is well settled that the government may offer substantial benefits to a defendant in return for a guilty plea without violating the Fifth Amendment. *Corbitt v. New Jersey*, 439 U.S. 212, 218-20 (1978); *Bordenkircher*, 434 U.S. at 364-65; *Brady v. United States*, 397 U.S. 742, 751 (1970). Furthermore, since section 3E1.1 is not intended to apply to circumstances where a defendant refuses to admit factual guilt, a defendant invoking section 3E1.1 does not incriminate himself and jeopardize his post-trial rights by admitting wrongdoing. Therefore, section 3E1.1 may be reasonably interpreted as denying a defendant a benefit he would have received had he accepted responsibility in a timely fashion, rather than penalizing him for exercising his right to remain silent.

█ Our sentencing scheme contains no similar provision explicitly encouraging defendants to accept responsibility early. Rather, in New Hampshire, trial courts have broad discretion to determine the length of a sentence. *State v. Morehouse*, 120 N.H. 738, 742 (1980). In this context, characterizing a court's refusal to grant leniency based upon a defendant's failure to express remorse as a "denied benefit" as opposed to a "penalty" is inconsistent with the reality of New Hampshire's sentencing scheme. *See Frierson*, 945 F.2d at 658. The trial courts determine which factors favor mitigation or aggravation of a sentence, and, thus, may adjust a sentence within the statutory limits at their discretion. *Petition of State of N.H. (State v. Fischer)*, 152 N.H. 205, 211 (2005). Therefore, "[w]e doubt that a principled distinction may be drawn between 'enhancing' the punishment imposed upon the [defendant] and denying him the 'leniency' he claims would be appropriate if he had" expressed remorse, *Roberts v. United States*, 445 U.S. 552, 557 n.4 (1980), since, ultimately, the result is the same: a sentence within the statutory limits for the specified crime. Moreover, for a defendant who has maintained his innocence throughout the criminal process, the Hobson's choice has not disappeared after trial: the defendant must either remain silent and lose the opportunity for leniency, or speak and run the risk of jeopardizing his post-trial rights. *Frierson*, 945 F.2d at 659. Accordingly, under our sentencing scheme,

denying a defendant leniency simply because he fails to speak and express remorse is equivalent to penalizing him for exercising his right to remain silent.

## IV

■ In holding that a sentencing court may not draw a negative inference of lack of remorse from a defendant's silence at sentencing, we note that this holding does not preclude a court from considering other evidence besides a defendant's silence that indicates a defendant's lack of remorse. *See Shreves*, 60 P.3d at 996. Nor does it prevent a trial court from considering a defendant's false trial testimony as a sentencing factor. *Grayson*, 438 U.S. at 53-54.

■ Furthermore, this holding is limited to situations where a defendant maintains his innocence throughout the criminal process and risks incriminating himself if he expresses remorse at sentencing. Where a defendant pleads guilty to a crime, he accepts a lower sentence in exchange for his admission of wrongdoing, and, thus, must inevitably incriminate himself. The Hobson's choice faced by defendants who maintain their innocence is no longer present as this defendant does not risk jeopardizing his post-trial rights by speaking. Accordingly, with a guilty plea, a court's denial of leniency based upon a defendant's failure to express remorse is more akin to a defendant not receiving an additional benefit he would have received had he expressed remorse, rather than being penalized for exercising his privilege against self-incrimination. *See Frazier*, 971 F.2d at 1082-84.

Thus, a sentencing court's inference of a lack of remorse from a defendant's silence at sentencing does not violate the privilege against self-incrimination in all instances. To determine whether a particular defendant's right to remain silent has been violated, we must examine the factual circumstances of each case. For example, where a defendant admits to committing the acts underlying the charged crime, but disputes whether he had the requisite mental state for the crime, or offers a legal justification for committing those acts, the defendant's silence at sentencing might, in certain instances, legitimately be considered as a lack of remorse. *See Brake*, 939 P.2d at 1034 (Shearing, C.J., concurring in part and dissenting in part).

In *Brake*, the defendant was charged with first degree murder. *Id.* at 1031. At trial, the defendant admitted to shooting the victim, but claimed that he had done so in self-defense. *Id.* The jury found the defendant guilty. *Id.* At sentencing, citing the defendant's failure to express remorse, the court imposed the maximum sentence. *Id.* at 1033. On appeal, the

majority of the Supreme Court of Nevada concluded that the sentencing court violated the defendant's Fifth Amendment rights. *Id.* It reasoned that the defendant's "theory at trial was that he had killed [the victim] in self-defense; as such, he had maintained his innocence of the crime for which he was ultimately convicted and was unable to express remorse and admit guilt to first degree murder without foregoing his right to not incriminate himself." *Id.* Chief Justice Shearing disagreed with the majority, explaining:

> [The defendant] *admitted* killing the victim. The only question was whether or not the killing was in self-defense. Even if the killing had been in self-defense, [the defendant]'s lack of remorse would have been a legitimate consideration of the sentencing judge. [The defendant]'s claim of self-defense and a feeling of remorse are not in conflict. Thus, . . . [the defendant]'s right to remain silent is not implicated. The sentencing judge may legitimately consider a defendant's lack of feeling about killing a fellow human being, when the defendant admits to the killing.

*Id.* at 1034 (Shearing, C.J., concurring in part and dissenting in part).

■ We find Chief Justice Shearing's reasoning persuasive for the purposes of this case. As in *Brake*, the defendant confessed to committing the acts underlying both crimes. He admitted that he cut the lace from his shoe; used it to disable the locking mechanism of the brace; pulled away from Moran when Moran attempted to handcuff him after the proceeding; and lunged towards the courtroom exit. The defendant denied only that he had the requisite intent to escape from official custody. His right to remain silent was not implicated because he would not have risked incriminating himself or jeopardizing his post-trial rights by expressing remorse for his acts. For example, the defendant could have expressed regret for endangering the safety of court personnel without undermining his assertion that when he broke away from court officers, he did not intend to escape from official custody, but, rather, was reacting to feelings of panic and anxiety. Therefore, the defendant's asserted lack of intent to escape would not have conflicted with any feelings of remorse. Because this is not a case in which "the only affirmative way for [the] defendant to express remorse [wa]s to waive his right to remain silent," *Jackson*, 643 A.2d at 1379, we reject the defendant's contention that the trial court penalized him for exercising his privilege against self-incrimination when it denied him leniency based upon his silence at sentencing.

## V

The defendant also argues that the trial court improperly considered his "silence during the PSI process . . . as a factor supporting" his sentence. The trial court's order on the defendant's motion to vacate clarifies that the court considered, not the defendant's "silence" at the PSI, but his "lack of involvement" or "declination to participate" in the PSI as a sentencing factor. Accordingly, we do not address the separate question of whether a sentencing court's use of a defendant's silence during a PSI would violate his privilege against self-incrimination under the State Constitution.

Here, the defendant never met with the officer conducting the PSI. This failure to participate in the PSI is relevant to the defendant's potential for rehabilitation, which is an appropriate sentencing consideration. *See Lee v. State*, 36 P.3d 1133, 1141 (Wyo. 2001) ("A defendant's failure to cooperate in the PSI is certainly a valid factor for a trial court to consider in contemplating the appropriate sentence . . . ."); *cf. Roberts*, 445 U.S. at 557 (failure to cooperate with authorities gives rise to an inference of a decreased potential for rehabilitation). A PSI contains, among other things, information pertaining to a defendant's family history, prior criminal record, and other background information. *State v. Schulte*, 119 N.H. 36, 39 (1979). In fact, a PSI may "contain information bearing no relation whatever to the crime with which the defendant is charged." *State v. Ferbert*, 113 N.H. 235, 237-38 (1973) (quotation omitted). Therefore, participation in the PSI did not require the defendant to incriminate himself. For example, he could have been involved with the PSI and still refused to discuss his factual guilt or possible remorse by invoking his right to remain silent at that time. Instead, the defendant refused to cooperate with the authorities on the simplest matters not relating to the crimes with which he was charged. *See Commonwealth v. Begley*, 780 A.2d 605, 644 (Pa. 2001). Thus, he could not properly invoke the privilege as a basis for refusing to participate in the PSI. Given that the defendant could have participated in the PSI without jeopardizing his post-trial rights, the trial court did not violate his privilege against self-incrimination when it used the defendant's declination to participate in the PSI as a factor indicating that he had a reduced potential for rehabilitation. *See id.*

Because the trial court in this case did not violate the defendant's privilege against self-incrimination under the State Constitution by using his silence at the sentencing hearing and failure to participate in the PSI as sentencing factors, we affirm.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.