J-A27032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JOHN MCCLINTIC | |
| Appellant | No. 2567 EDA 2009 |

Appeal from the Judgment of Sentence August 12, 2009
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): 10207058511
CP-51-CR-0801571-2002
CP-51-CR-0801581-2002

BEFORE: PANELLA, LAZARUS, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED MAY 18, 2017**

Appellant, John McClintic, appeals from his judgment of sentence of forty-five to ninety years' imprisonment arising from two separate home invasions against the same elderly victim within an eight-day span. Appellant argues, *inter alia*, that the trial court (1) erred in sentencing him as a "third-strike" offender because he had not previously been sentenced as a "second-strike" offender under 42 Pa.C.S. § 9714, (2) erred in construing his silence at sentencing as lack of remorse, (3) abused its discretion in sentencing him outside of the Sentencing Guidelines, and (4) abused its discretion in imposing consecutive sentences. We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

This case has a lengthy and tortuous history. At approximately 2:00 a.m. on June 27, 2002, Appellant broke into a house in Philadelphia where Sarah K., an eighty-five-year-old woman who lived alone, had resided for approximately sixty years. When Appellant entered Ms. K.'s bedroom, she awoke and immediately recognized Appellant, who lived two doors away. Appellant stood over six feet, weighed 250 pounds, and was bare-chested and covered with tattoos. Ms. K. was five feet, two inches tall.

Appellant sat down next to Ms. K. on her bed and said: "Give me your money. I won't hurt you but I have a gun." N.T., 1/22/03, at 68. Ms. K. was "shaking like a leaf" and feared she would suffer a heart attack, but she managed to show him a wallet on her night table that contained $125.00. Appellant demanded more money. *Id.* at 69. She told him the only thing she had left was a little purse with a few dollars in change for bingo. He took that as well. He then grabbed her right breast and pinched it "with all his strength"—so hard that Ms. K could not scream because she lost her voice. *Id.* at 71.

After Appellant left, Ms. K. discovered that a board securing one of her windows had been removed, and that her telephone line had been cut. She had the telephone company repair the line but did not report the crime.

Eight days later, on July 5, 2002, Appellant again broke into Ms. K.'s home in the early morning hours and entered her bedroom. He repeated that he had a gun and forced Ms. K. to hand over the only money she had

left in the house, a bag containing some dimes and two bracelets. He then "cracked" her right thigh "real[ly] hard" and ordered her to get back into bed. *Id.* at 84. After Appellant left, Ms. K. tried to call the police, but the telephone line had been cut again. In addition, a door and two windows had been forced open. Ms. K. eventually contacted the police, who arrested Appellant. Ms. K. became obsessively concerned with her safety, was no longer able to live independently and had to move into an assisted living arrangement facility.

In January 2003, a jury found Appellant guilty of committing robbery and burglary on both June 27, 2002 and July 5, 2002. At the time, he had an extensive criminal record that included two prior "strikes" for purposes of sentencing as a recidivist offender: a 1987 sentence for aggravated assault and a 1997 sentence for robbery.

At sentencing on March 25, 2003, defense counsel agreed that Appellant was subject to a third strike mandatory minimum sentence but requested that he receive only one sentence of twenty-five to fifty years' imprisonment. The trial court imposed four separate third strike sentences— one each for the June 27, 2002 robbery and burglary and one each for the July 5, 2002 robbery and burglary. This Court affirmed the judgment of sentence, but our Supreme Court reversed. *See Commonwealth v. McClintic*, 909 A.2d 1241 (Pa. 2006) ("*McClintic I*"). The Supreme Court found that "Appellant had two prior convictions for crimes of violence and

thus qualified as a 'three strikes offender'" but determined that "the legislature intended to apply sentencing enhancements for all crimes arising from a criminal transaction, rather than for each individual crime within the transaction." *Id.* at 1243, 1251. The Court "remanded to the trial court for re-sentencing consistent with this opinion." *Id.* at 1252.

On January 23, 2007, Appellant appeared for resentencing. The trial court imposed one third strike sentence for the June 27, 2002 episode and a second third strike sentence for the July 5, 2002 episode. Appellant filed post-sentence motions, and the court agreed to vacate the judgments of sentence and schedule further proceedings.

In April 2007, the trial court held a third sentencing hearing. Appellant claimed, for the first time, that he was not a third strike offender because he had never been sentenced as a second strike offender. The trial court rejected this argument and re-imposed the January 23, 2007 sentence. "[A]ny deviation from the [Sentencing G]uidelines," the court explained, was attributable to the "gravity of the offense," including "the fact that [Ms. K.']s a senior citizen, a very tiny lady compared to [Appellant's] very tall height and weight . . ." N.T., Sentencing Hr'g, 1/23/07, at 38.

Appellant appealed, claiming that he was not subject to a third strike penalty. This Court held that Appellant waived this objection, and that his status as a third strike offender was the law of the case. *Commonwealth v. McClintic*, No. 1249 EDA 2007 (unpublished memorandum) (Pa. Super.

Sept. 19, 2008) ("**McClintic II**"). We concluded, however, that Appellant could receive no more than a single third strike sentence for both home invasions and remanded for resentencing on that basis.

On August 12, 2009, Appellant appeared before the trial court for his fourth sentencing hearing. Appellant answered several factual questions relating to his age, his prison employment and the date of a particular prison disciplinary infraction. N.T., Sentencing Hr'g, 8/12/09, at 13, 14, 26, 27, 32. The following exchange also took place:

> The Court: Do you have anything you want to say, Mr. McClintic?
>
> [Appellant]: No, ma'am.
>
> The Court: Okay. If you change your mind, you may address me. Okay?
>
> [Appellant]: Yes, ma'am.

*Id.* at 14.

The Commonwealth incorporated by reference all arguments, evidence and exhibits presented during Appellant's prior sentencing hearings in 2003 and 2007. *Id.* at 14-15. Further, the Commonwealth introduced evidence that Appellant had committed three disciplinary infractions in 2007 and 2008: one for loaning or borrowing property in violation of prison rules, a second for using obscene language and refusing to obey staff orders, and a third for self-mutilation and possession of contraband and money. *Id.* at 15-17.

- 5 -

The court observed that it had reviewed the relevant Sentencing Guidelines during the 2003 and 2007 sentencing hearings, *id.* at 17, but the Commonwealth repeated them once again. *Id.* at 17-18. The court responded: "I understand. Because every sentencing has to start with the guideline consideration and I just want to be sure we are in agreement." *Id.* at 18.

The trial court acknowledged that Appellant had taken one step to rehabilitate himself by studying the Bible and involving himself in the Holy Name Society. *Id.* at 35-36. The court found, however, that other factors demonstrated Appellant's inability to rehabilitate himself. To begin with, the court noted that he traumatized the elderly victim during the two home invasions: "[I] remember the pinching of the [victim's] breasts so hard that it was black, green, purple and blue for weeks and weeks afterwards." *Id.* at 35. Moreover, despite several terms in state prison for his prior offenses, he had

> three [infractions since his 2007 sentencing hearing] that resulted in being disciplined by the [p]rison. And what that shows me . . . is that I have great concerns that you cannot be supervised in society safely and securely. You don't follow the rules . . .

*Id.* at 36. The court added: "I have not heard anything—I have heard no remorse about what happened." *Id.* at 37-38.

The trial court imposed (1) a single third strike sentence of twenty-five to fifty years for the June 27, 2002 robbery, (2) a concurrent ten to twenty

year sentence for the June 27, 2002 burglary, (3) a consecutive ten to twenty year sentence for the July 5, 2002 robbery, (4) a consecutive ten to twenty year sentence for the July 5, 2002 burglary, and (5) no further penalty for the remaining offenses for an aggregate of forty-five to ninety years' imprisonment. *Id.* at 38-39. The court explained that it did not impose this sentence "out of vengeance . . . [or] anger. I only do it to protect the community. I feel [Appellant] has not shown he is rehabilitated. I have my concerns. There is no remorse here and [Appellant's] history of violence warrants this sentence." *Id.* at 40.

Appellant filed post-sentence motions in which he argued, *inter alia*, that he had the right "to remain silent at sentencing without suffering an adverse inference of non-remorse." Post-Sentence Mot., 8/14/09, at 3. On August 18, 2009, the trial court denied Appellant's post-sentence motions. On August 31, 2009, Appellant timely appealed to this Court.[1] The trial court issued a Pa.R.A.P. 1925(a) opinion without directing Appellant to file a Pa.R.A.P. 1925(b) statement. The court did not address Appellant's lack of remorse issue in its opinion.

---

[1] This appeal has been protracted due to multiple delays from 2009 to 2013 in preparing a complete and accurate record for appeal. On April 1, 2013, the Appeals Unit of the Clerk of Quarter Sessions received the record. Inexplicably, the Appeals Unit did not transmit the record to this Court until September 9, 2015. The parties did not complete briefing until the end of June 2016, and the case was argued on September 28, 2016.

Appellant raises four issues in this appeal, which we re-order for purposes of disposition:

> 1. Was not the "Strike Three" penalty illegally imposed because [A]ppellant never previously suffered a "Strike Two" penalty[?]
>
> 2. Was it not sentencing error for the trial court to consider non-remorse as a sentencing factor based upon [A]ppellant's invocation of his constitutional right to remain silent at sentencing?
>
> 3. Was not the trial court's non-recognition that it sentenced [A]ppellant "outside" of the Sentencing Guidelines sentencing error?
>
> 4. Was not the sentence imposed excessive?

Appellant's Brief at 3.

Appellant first argues that he cannot receive a third strike sentence because he never received a second strike sentence for either his 1987 aggravated assault conviction or his 1996 robbery conviction. This challenge to the legality of his sentence raises a question of law over which we exercise plenary review. **Commonwealth v. Williams**, 868 A.2d 529, 532 (Pa. Super. 2005). We conclude that the law of the case doctrine precludes Appellant from raising this issue, because this Court previously ruled on this issue in its memorandum in 1249 EDA 2007.

The law of the case doctrine is

> a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter. Among the related but distinct rules which make

up the law of the case doctrine are that: (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.

*Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995). This general prohibition, however, is not absolute. Departure from the rule is permissible in "exceptional circumstances such as where there has been a change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed." *Id.* at 1332.

Following his resentencing hearings in 2007, Appellant appealed to this Court and raised the same issue that he now attempts to raise in this appeal: "Was not the 'strike three' penalty improperly imposed because [A]ppellant never previously suffered a 'strike two' penalty?" *McClintic II*, at 3. In response, this Court determined that the law of the case doctrine barred Appellant from re-litigating his status as a third-strike offender, because the Supreme Court had previously confirmed in 2006 that Appellant was a third-strike offender. *Id.* at 6-8 (citing *McClintic I*, 909 A.2d at 1250-52). Moreover, Appellant's challenge to his third-strike status did not fall within any exception to the law of the case doctrine "such as an intervening change in the law, a substantial change in the facts, or a prior

ruling that was clearly erroneous that would create a manifest injustice if followed." *Id.* at 9. Appellant's present appeal is another attempt to re-litigate whether his third strike sentence is improper due to the lack of a second strike sentence, the same question that our Supreme Court previously decided against Appellant in *McClintic I* and that this Court previously refused to reconsider in *McClintic II* on the basis of *McClintic I*. Like the *McClintic II* court, we have no authority to overrule our Supreme Court's determination of this question in *McClintic I*.[2]

Appellant next argues that the trial court abused its discretion by construing Appellant's invocation of his constitutional right to remain silent during sentencing as demonstrating his lack of remorse. In view of our reasoning in *Commonwealth v. Bowen*, 975 A.2d 1120 (Pa. Super. 2009), no relief is due.

---

[2] Contrary to Appellant's suggestion, our Supreme Court's decision in *Commonwealth v. Shiffler*, 879 A.2d 185 (Pa. 2005), does not constitute a change in Supreme Court jurisprudence that authorizes us to reach a different decision than we did in *McClintic II*. "It is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court except in circumstances where intervening authority by our Supreme Court calls into question a previous decision of this Court." *Czimmer v. Janssen Pharmaceuticals, Inc.*, 122 A.3d 1043, 1063 n.19 (Pa. Super. 2015) (citation omitted). Implicit in "intervening" is that this panel cannot overrule a decision from a prior three-judge panel of this Court based on a Supreme Court decision that **pre-dates** the previous panel's decision. To be intervening, the Supreme Court's decision must issue **after** the prior panel's decision. *Shiffler* does not meet this test because it issued three years **before** our decision at 1479 EDA 2007.

Preliminarily, we observe that challenges to the discretionary aspects of sentencing do not entitle an appellant to appellate review as of right. Before reaching the merits of a discretionary sentencing issue:

> [w]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 781(b).

**Commonwealth v. Griffin**, 65 A.3d 932, 935 (Pa. Super. 2013) (some citations omitted).

Here, Appellant timely filed a notice of appeal, argued in post-sentence motions that the court abused its discretion by equating his silence with lack of remorse and included a Rule 2119(f) statement in his brief. We evaluate what constitutes a substantial question on a case-by-case basis. **Commonwealth v. Paul**, 925 A.2d 825, 828 (Pa. Super. 2007). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Griffin**, 65 A.3d at 935 (citation and internal quotation marks omitted).

Here, Appellant contends that the court violated his constitutional rights by holding his invocation of his right to silence against him. This claim

raises a substantial question for our review, so we will address its merits. ***Bowen***, 975 A.2d at 1122 (defendant's contention that his sentence "was based on an unconstitutional factor . . . raises a substantial question for our review").

"[I]t is undoubtedly appropriate for a trial court to consider a defendant's lack of remorse as a factor at sentencing, provided that it is specifically considered in relation to protection of the public, the gravity of the offense, and the defendant's rehabilitative needs." ***Id.*** at 1125 (citation omitted). On the other hand, the Fifth Amendment's privilege against self-incrimination prohibits the court from construing the defendant's **silence** during sentencing as "the sole basis for finding that [the] defendant lacked remorse." ***Id.*** at 1127.

In ***Bowen***, the defendant chose not to testify during trial. A jury acquitted him of rape and sexual assault charges but convicted him of simple assault and terroristic threats. Appellant continued to remain silent at sentencing. The trial court imposed a standard range sentence for simple assault and a consecutive, aggravated range sentence of imprisonment for terroristic threats. As justification for the aggravated range sentence, the court noted Appellant's poor employment history, long history of recidivism, the victim's emotional trauma, and Appellant's failure to show any remorse, even after the jury's decision.

This Court disapproved of the trial court's "consider[ation of the] defendant's silence at sentencing as indicative of his failure to take responsibility for the crimes of which he was convicted." *Id.* at 1121. We discussed *State v. Burgess*, 943 A.2d 727 (N.H. 2008), as follows:

> [T]he New Hampshire [Supreme] Court undertook an extensive analysis [in *Burgess*] of which federal and state jurisdictions permit a sentencing court to consider when "a defendant's silence after trial may be considered as a failure to accept responsibility or failure to express remorse, and thus indicate that an individual has a reduced potential for rehabilitation," and which jurisdictions "hold that a sentencing court may not consider a defendant's silence at sentencing as indicating a lack of remorse without violating his privilege against self-incrimination." *Id.* [] 943 A.2d at 734–35. In agreeing with the latter jurisdictions, the *Burgess* Court referenced "the Hobson's choice," that is, "the defendant must admit wrongdoing and jeopardize his post-trial remedies, testify falsely and risk a perjury conviction, or remain silent and risk obtaining a greater sentence." *Id.* [] 943 A.2d at 735–36 (quoting *State v. Shreves*, [] 60 P.3d 991, 996–97 ([Mont.] 2002), and citing *South Dakota v. Neville*, 459 U.S. 553, 563 [] (1983)).

*Bowen*, 975 A.2d at 1125-26. Because Pennsylvania's sentencing scheme subjected defendants to the same hazards in most cases,[3] we held that "silence at sentencing may not form the basis of finding that a defendant

---

[3] We agreed with *Burgess* that "'the Hobson's choice' is not automatically present at sentencing, because some factual circumstances may indicate that expressing remorse would not be a newly incriminatory statement." *Id.* at 1126 n. 6. One such circumstance could occur when "the defendant admits to committing the acts[] but claims he lacked the requisite mental state to convict him of the crime." *Id.* (citing *Burgess*, 943 A.2d at 738–39).

- 13 -

failed to take responsibility for his crimes [and] may not be the sole basis for finding that a defendant lacked remorse." *Id.* at 1127.

Nevertheless, the *Bowen* court determined that a remand for resentencing was not necessary, because "several other [legitimate] factors [warranted] an aggravated-range sentence, including [the a]ppellant's lack of a significant job history and the great emotional trauma his crimes caused the victim, as well as his recidivist history and violations of probation." *Id.* (quotations omitted).

This case is substantially similar to *Bowen*. Aside from answering several basic questions about his age, prison employment and date of a particular disciplinary infraction in prison, Appellant remained silent during sentencing. The trial court equated Appellant's silence with lack of remorse in violation of his Fifth Amendment right against self-incrimination. This, however, was not the only factor that the court took into consideration: it also relied on multiple appropriate sentencing factors, including the serious impact of Appellant's crimes on the helpless victim, his dim prospects for rehabilitation in view of his prior criminal history, and his disciplinary record in prison. Thus, as in *Bowen*, we hold that the court's error in regarding Appellant's silence as indicating lack of remorse does not entitle Appellant to resentencing.

Appellant further argues that *Bowen* should be overruled because it conflicts with *Commonwealth v. Bethea*, 379 A.2d 102, 104 (Pa. 1977), in

which our Supreme Court held that the trial court cannot penalize the defendant at sentencing for exercising his constitutional rights. In **Bethea**, the trial court imposed a harsher sentence because the defendant exercised his right to go to trial instead of pleading guilty. Although the trial court also based its sentence on other permissible factors, such as the violent nature of the crime, the Supreme Court held that "it is sufficient to render a sentence invalid if it reasonably appears from the record that the trial court relied in whole or in part upon [an impermissible] factor."[4] **Id.** at 107.

Even if Appellant's objection to **Bowen** is correct, we cannot grant him relief. As we observed above in footnote 2, a three-judge panel of this Court cannot overrule a prior three-judge panel's decision on the basis of a Supreme Court decision that pre-dates the prior panel's decision. Because **Bethea** pre-dates this Court's decision in **Bowen**, we cannot overrule **Bowen** on the basis of **Bethea**. Only an *en banc* panel of the Superior Court, or the Supreme Court itself, could overrule **Bowen** on this basis.[5]

---

[4] Subsequently, the Supreme Court held in **Commonwealth v. Smith**, 673 A.2d 893 (Pa. 1996), that "our decision in **Bethea** is limited to the narrow category of cases in which a trial court impermissibly penalizes a defendant for exercising constitutional rights." **Smith**, 673 A.2d at 896. **Bethea** does apply when the trial court considers an impermissible, but non-constitutional, sentencing factor. **Id.** In that circumstance, it is possible for the impermissible factor to be offset by other permissible factors. **Id.** at 896-97.

[5] We express no opinion on whether Appellant's analysis of **Bethea** is legally sound.

In his third argument, Appellant contends that the trial court abused its discretion because it failed to recognize that it was sentencing Appellant outside of the Sentencing Guidelines for non-mandatory offenses. We disagree.

The trial court was familiar with this case, having presided over Appellant's trial and two previous sentencing hearings in 2003 and 2007. Moreover, the court stated during the 2007 hearing that any "deviation from the guidelines" was attributable to the gravity of the offense, including the disparity in height and weight between Appellant and the elderly victim. N.T., Sentencing Hr'g, 1/23/07, at 38. During the 2009 hearing, the Commonwealth incorporated all prior arguments, evidence and exhibits from the 2003 and 2007 sentencing hearings into the record. N.T., Sentencing Hr'g, at 14-15. Although the court stated that it had reviewed the guidelines during the 2003 and 2007 sentencing hearings, the Commonwealth repeated them again in an abundance of caution. *Id.* at 17-18. Thus, the court was aware in 2009, as it had been aware in 2007, that it was sentencing Appellant outside the Sentencing Guidelines.

Appellant seizes upon the fact that the court referred to "following the guidelines" and imposing a "guidelines sentence" in its Pa.R.A.P. 1925(a) opinion. Based on the combination of factors summarized above, we agree with the Commonwealth that this "was mere shorthand for a sentence that

- 16 -

properly took the guidelines into account, as the [court] explained she . . . had an obligation to do." Commonwealth's Brief at 16.

Finally, Appellant argues that his sentence is excessive because the court imposed consecutive sentences in addition to the mandatory "third strike" penalty of twenty-five to fifty years' imprisonment. We disagree.

A court's decision to impose consecutive rather than concurrent sentences generally does not raise a substantial question for appellate review. *See Commonwealth v. Gonzalez-Dejusus*, 994 A.2d 595, 598 (Pa. Super. 2010). Assuming *arguendo* that Appellant presents a substantial question, he still is not entitled to relief.

A sentence cannot be disturbed absent a manifest abuse of discretion. *See Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014), *appeal denied*, 117 A.3d 297 (Pa. 2015) (citation omitted). This may be found only if "the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. Perry*, 32 A.3d 232, 236 (Pa. 2011) (citation omitted). We afford great weight to the sentencing court's views, because "it is in [the] best position to assess the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of [his] crime[s]." *Commonwealth v. Ventura*, 975 A.2d 1128, 1134 (Pa. Super. 2009) (citation omitted).

Here, the trial court was exceptionally familiar with Appellant, having presided over his jury trial, obtained a presentence report, tracked his subsequent conduct over a period of years and received extensive evidence during multiple sentencing hearings. Appellant's offenses were grievous: he repeatedly targeted an elderly woman, invaded her bedroom at night, forced her to hand over her meager belongings, pinched her breast as hard as he could and "cracked" her thigh. The impact on the victim was devastating, for she developed mental health problems that required her to leave the home where she had lived for six decades. In addition, Appellant was a poor candidate for rehabilitation in view of his extensive criminal record and history of disciplinary infractions in prison. We hold that the trial court acted within its discretion by imposing an aggregate sentence of forty-five to ninety years' imprisonment.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/18/2017